### KUTNER BRINEN DICKEY RILEY, P.C.

ATTORNEYS AT LAW
1660 LINCOLN STREET
SUITE 1720
DENVER, COLORADO 80264-1235
WRITER'S DIRECT
(303) 832-2910

KERI L. RILEY
klr@kutnerlaw.com

TELEPHONE 303-832-2400

**FILED**
**CLERK OF COURT**

**MAR – 4 2024**

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

February 22, 2024

TO:     Creditors and Parties-in-Interest

Re:     Gallus Detox Services, Inc. Bankruptcy Case/Case No. 23-15280-JGR
Gallus Detox Denver, LLC Bankruptcy Case/Case No. 23-15283-JGR
Gallus Detox Scottsdale, LLC Bankruptcy Case/Case No. 23-15284-JGR
Gallus Detox Dallas, PLLC Bankruptcy Case/Case No. 23-15285-JGR
Jointly Administered under Case No. 23-15280-JGR

Dear Creditors and Parties-in-Interest:

This letter and package are being provided to you as a creditor in the referenced Chapter 11 cases. Please find enclosed with this letter the Joint Subchapter V Plan of Reorganization dated February 12, 2024 for Gallus Detox Services, Inc.; Gallus Detox Denver, LLC; Gallus Detox Scottsdale, LLC; and Gallus Detox Dallas, PLLC, Order Setting Hearing on Confirmation of Chapter 11 Subchapter V Plan and Notice of Deadlines; and Ballots for the 4 entities. These documents should be used in voting on the Plan.

The Debtors have been operating under Chapter 11 of the Bankruptcy Code since November 14, 2023. The Plan is the formal proposal made by the Debtors for the reorganization of their obligations and forms the basis for their emergence from Chapter 11. Please review the Plan carefully before casting your Ballot. **Please only submit a ballot for the entity against whom you have a claim.** If you have a claim against multiple entities, you may be submitting multiple ballots.

If you are the holder of a Class 12 Claim as defined in the Plan and more specifically identified on Exhibit B to the Plan, you are required to make an election if you wish to be treated as a Class 11 Creditor. If you do not make an election and the Plan is confirmed, you will be deemed to have accepted the treatment provide to Class 12 Creditors.

The Debtors consider the enclosed Plan the best available option for their reorganization. The Debtors believe the Plan provides the best opportunity for creditors to recover on their claims within a reasonable amount of time. The Debtors urge each of you to cast your Ballot accepting the Debtors' Plan. Please complete your Ballot and return it to me on or before **5:00 P.M., MARCH 22, 2024**. If you have any questions concerning the Plan, please do not hesitate to call.

Very truly yours,

Keri L. Riley

KLR/vlm
Enclosures

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 23-15280-JGR |
| GALLUS DETOX SERVICES, INC. | ) | |
| | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

**BALLOT FOR ACCEPTING OR REJECTING JOINT**
**SUBCHAPTER V PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024**

**TO CREDITORS AND PARTIES IN INTEREST:**

The Debtor, Gallus Detox Services, Inc. filed a Joint Subchapter V Plan of Reorganization dated February 12, 2024 for Small Business under Chapter 11, Subchapter V (the "Plan"). If you do not have a Plan, you may obtain a copy from Keri L. Riley, Esq., Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264; telephone: (303) 832-2400; e-mail: klr@kutnerlaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ___ under the Plan. If you hold claims or equity interests in more than one class, you will receive a Ballot for each class in which you are entitled to vote.

If your Ballot is not received by Keri L. Riley, Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264 on or before **5:00 P.M. ON MARCH 22, 2024**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $_____.

<div align="center">

(Please check one)
_____ Accepts
_____ Rejects

</div>

the Plan for the reorganization of the above-named Debtor.

**FOR CLASS 12 ONLY:** _____ **By checking here, I am opting OUT of treatment as a Class 12 Creditor and am electing to be treated as a Class 11 Trade Creditor.**

DATED:_____
TYPE OR PRINT NAME OF CREDITOR:_____
SIGNED:_____
(IF APPROPRIATE) BY:_____
AS (TITLE):_____
ADDRESS:_____
**RETURN THIS BALLOT ON OR BEFORE: 5:00 P.M. ON MARCH 22, 2024**

**PLEASE SEND ORIGINAL TO:**         **Keri L. Riley**
**Kutner Brinen Dickey Riley, P.C.**
**1660 Lincoln Street, Suite 1720**
**Denver, CO 80264**
**Telephone: (303) 832-2400**
**Email: klr@kutnerlaw.com**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:                            )

                                 )     Case No. 23-15283-JGR

**GALLUS DETOX DENVER, LLC,**    )

                                 )     Chapter 11, Subchapter V

                                 )

Debtor.                      )

### BALLOT FOR ACCEPTING OR REJECTING JOINT
### SUBCHAPTER V PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024

**TO CREDITORS AND PARTIES IN INTEREST:**

The Debtor, Gallus Detox Denver, LLC filed a Joint Subchapter V Plan of Reorganization dated February 12, 2024 for Small Business under Chapter 11, Subchapter V (the "Plan"). If you do not have a Plan, you may obtain a copy from Keri L. Riley, Esq., Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264; telephone: (303) 832-2400; e-mail: klr@kutnerlaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ____ under the Plan. If you hold claims or equity interests in more than one class, you will receive a Ballot for each class in which you are entitled to vote.

If your Ballot is not received by Keri L. Riley, Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264 on or before **5:00 P.M. ON MARCH 22, 2024**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $_____.

                    (Please check one)

               _____ Accepts

               _____ Rejects

the Plan for the reorganization of the above-named Debtor.

DATED:_____

TYPE OR PRINT NAME OF CREDITOR:_____

SIGNED:_____

(IF APPROPRIATE) BY:_____

AS (TITLE):_____

ADDRESS:_____

**RETURN THIS BALLOT ON OR BEFORE: 5:00 P.M. ON MARCH 22, 2024**

**PLEASE SEND ORIGINAL TO:**        **Keri L. Riley**
                                           **Kutner Brinen Dickey Riley, P.C.**
                                           **1660 Lincoln Street, Suite 1720**
                                           **Denver, CO 80264**
                                           **Telephone: (303) 832-2400**
                                           **Email: klr@kutnerlaw.com**

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

IN RE:                                        )
                                              )        Case No. 23-15285-JGR
GALLUS DETOX DALLAS, PLLC,                     )
EIN: 88-2490456                                )        Chapter 11, Subchapter V
                                              )
Debtor.                                        )

### BALLOT FOR ACCEPTING OR REJECTING JOINT
### SUBCHAPTER V PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024

**TO CREDITORS AND PARTIES IN INTEREST:**

The Debtor, Gallus Detox Dallas, PLLC filed a Joint Subchapter V Plan of Reorganization dated February 12, 2024 for Small Business under Chapter 11, Subchapter V (the "Plan"). If you do not have a Plan, you may obtain a copy from Keri L. Riley, Esq., Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264; telephone: (303) 832-2400; e-mail: klr@kutnerlaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ___ under the Plan. If you hold claims or equity interests in more than one class, you will receive a Ballot for each class in which you are entitled to vote.

If your Ballot is not received by Keri L. Riley, Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264 on or before **5:00 P.M. ON MARCH 22, 2024**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $_____.

                                        (Please check one)
                                        _____ Accepts
                                        _____ Rejects

the Plan for the reorganization of the above-named Debtor.

DATED:_____

TYPE OR PRINT NAME OF CREDITOR:_____

SIGNED:_____

(IF APPROPRIATE) BY:_____

AS (TITLE):_____

ADDRESS:_____

**RETURN THIS BALLOT ON OR BEFORE: 5:00 P.M. ON MARCH 22, 2024**

**PLEASE SEND ORIGINAL TO:**          **Keri L. Riley**
                                      **Kutner Brinen Dickey Riley, P.C.**
                                      **1660 Lincoln Street, Suite 1720**
                                      **Denver, CO 80264**
                                      **Telephone: (303) 832-2400**
                                      **Email: klr@kutnerlaw.com**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
)                      Case No. 23-15284-JGR
GALLUS DETOX SCOTTSDALE, LLC )
EIN: 88-2490456 )                      Chapter 11, Subchapter V
)
Debtor. )

**BALLOT FOR ACCEPTING OR REJECTING JOINT
SUBCHAPTER V PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024**

**TO CREDITORS AND PARTIES IN INTEREST:**

The Debtor, Gallus Detox Scottsdale, LLC filed a Joint Subchapter V Plan of Reorganization dated February 12, 2024 for Small Business under Chapter 11, Subchapter V (the "Plan"). If you do not have a Plan, you may obtain a copy from Keri L. Riley, Esq., Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264; telephone: (303) 832-2400; e-mail: klr@kutnerlaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ___ under the Plan. If you hold claims or equity interests in more than one class, you will receive a Ballot for each class in which you are entitled to vote.

If your Ballot is not received by Keri L. Riley, Kutner Brinen Dickey Riley, P.C., 1660 Lincoln Street, Suite 1720, Denver, Colorado 80264 on or before **5:00 P.M. ON MARCH 22, 2024**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $_____.

(Please check one)
_____ Accepts
_____ Rejects

the Plan for the reorganization of the above-named Debtor.

DATED:_____
TYPE OR PRINT NAME OF CREDITOR:_____
SIGNED:_____
(IF APPROPRIATE) BY:_____
AS (TITLE):_____
ADDRESS:_____
**RETURN THIS BALLOT ON OR BEFORE: 5:00 P.M. ON MARCH 22, 2024**

**PLEASE SEND ORIGINAL TO:**                **Keri L. Riley**
**Kutner Brinen Dickey Riley, P.C.**
**1660 Lincoln Street, Suite 1720**
**Denver, CO 80264**
**Telephone: (303) 832-2400**
**Email: klr@kutnerlaw.com**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: | |
| GALLUS DETOX SERVICES, INC.,<br>EIN: 88-2490456,<br><br>Debtor. | Case No. 23-15280-JGR<br>Chapter 11, Subchapter V |
| GALLUS DETOX DENVER, LLC,<br>EIN: 84-3421544,<br><br>Debtor. | Case No. 23-15283-JGR<br>Chapter 11, Subchapter V |
| GALLUS DETOX SCOTTSDALE, LLC,<br>EIN: 47-2515577,<br><br>Debtor. | Case No. 23-15284-JGR<br>Chapter 11, Subchapter V |
| GALLUS DETOX DALLAS, PLLC,<br>EIN: 87-2068937,<br><br>Debtor. | Case No. 23-15285-JGR<br>Chapter 11, Subchapter V<br><br>**Case Jointly Administered with Lead<br>Case No. 23-15280-JGR** |

## ORDER SETTING HEARING ON CONFIRMATION OF CHAPTER 11 SUBCHAPTER V PLAN AND NOTICE OF DEADLINES

The above-captioned, jointly-administered Debtors ("Debtors") are "debtors" within the meaning of 11 U.S.C. § 1182(1). The Debtors have made the election to have Subchapter V of Chapter 11 apply pursuant to and in accordance with Fed. R. Bankr. P. 1020(a). The Debtors filed a Joint Subchapter V Plan of Reorganization dated February 12, 2024 (Doc. 176; the "Plan") under Chapter 11 of the Bankruptcy Code. Therefore, it is

ORDERED, and notice is hereby given, that:

DATED this 16th day of February, 2024.

BY THE COURT:

Joseph G. Rosania, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:

GALLUS DETOX SERVICES, INC.
EIN: 88-2490456

Debtor.

Case No. 23-15280-JGR
Chapter 11

GALLUS DETOX DENVER, LLC
EIN: 84-3421544

Debtor.

Case No. 23-15283-JGR
Chapter 11

GALLUS DETOX SCOTTSDALE, LLC
EIN: 47-2515577

Debtor.

Case No. 23-15284-JGR
Chapter 11

GALLUS DETOX DALLAS, PLLC,
EIN: 87-2068937

Debtor.

Case No. 23-15285-JGR
Chapter 11

**JOINT PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024**

The Debtors, Gallus Detox Services, Inc. ("GDS"), Gallus Detox Denver, LLC ("Denver"), Gallus Detox Scottsdale, LLC ("Scottsdale"), and Gallus Detox Dallas, PLLC ("Dallas" and together with GDS, Denver, and Scottsdale, the "Debtors"), Debtors and Debtors-in-Possession in this Chapter 11 case, set forth their Joint Plan of Reorganization Dated February 12, 2024 as follows:

**ARTICLE I.**
**INTRODUCTION**

1.1 - This document constitutes the Plan of Reorganization for the Debtors. This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtors' Plan.

1.2 - Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth in Article II herein attached hereto.

1

1.3 - Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claim in Classes 2 through 13 as to GDS, Classes DE2 through DE8 as to Denver, Classes S2 through S8 as to Scottsdale, and Classes DA2 through DA8 as to Dallas shall be entitled to vote to accept or reject the Plan.

1.4 - Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1.5 - As discussed more fully below, the Debtors firmly believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 - THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

**ARTICLE II.**
**DEFINITIONS**

2.1 - "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving any Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Professional Fees, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code; provided, however, that post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtor's business, including, but not limited to, trade

2

whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors; *provided, however*, that, when used in the Plan, the term "Causes of Action" does not include any Claim, obligation, suit, judgment, damages, right, remedy, cause of action, charge, cost, debt, indebtedness, or liabilities released or waived pursuant to Paragraph 10.5 of the Plan or by order of the Bankruptcy Court, nor does the term "Causes of Action" include any appeals pending under applicable State Law for the refund of severance taxes. When used in the Plan, the term "Causes of Action" shall also specifically include any claim, demand, right, and cause of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim or Interest) on a derivative or other basis. A Cause of Action shall not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan. Except as expressly provided herein, nothing in the Plan operates as a release of any of the Causes of Action.

2.13 - "Chapter 11 Cases" means, together, the Debtors' Chapter 11 cases, pending in the Bankruptcy Court under Case Nos. 23-15280-JGR (GDS), 23-15283-JGR (Denver), 23-15284-JGR (Scottsdale), and 23-15285-JGR (Dallas), jointly administered under Case No. 23-15280-JGR.

2.14 - "Claim" means a "claim" against any Debtor, as defined in section 101(5) of the Bankruptcy Code and as supplemented by section 102(2) of the Bankruptcy Code, whether or not asserted, or reduced to judgment, whether known or unknown, liquidated or unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether arising before, on, or after the Petition Date.

2.15 - "Claims Bar Date" means January 23, 2024 or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court to File such Claims.

2.16 - "Claims Objection Bar Date" means, for each Claim, the later of (a) 120 Days after the Effective Date of the Plan and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

2.17 - "Class" means one of the classes of Claims or Interests listed in Article IV of this Plan.

2.18 - "Collateral" means any property or interest in property of any Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to

avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

2.19 - "Combined Net Revenue" means the combined revenue from GDS, Dallas, Scottsdale, and Denver after payment of expenses for all of the Debtors, including payment of any amounts owed on account of secured debt payments.

2.20 - "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

2.21 - "Confirmation Date" means the date that the Bankruptcy Court enters a Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

2.22 - "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to sections 1129 and 1191 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.23 - "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under sections 1129 and 1191 of the Bankruptcy Code.

2.24 - "Creditor" means a creditor, within the meaning of section 101(10) of the Bankruptcy Code, of any of the Debtors.

2.25 - "Debtors" means the Debtors who are proposing this Plan, GDS, Denver, Scottsdale, and Dallas.

2.26 - "Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) is not Scheduled or is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a bar date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law.

2.27 - "Disputed Claim" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, including, but not limited to, Claims (a) (i) that have not been Scheduled by any Debtor, but as to which a timely proof of claim has been filed or (ii) have been Scheduled at zero or as contingent, unliquidated, or disputed, but as to which a timely proof of claim in a liquidated amount has been filed and (b) as to which any Debtor, any Reorganized Debtor, or any other party-in-interest has interposed a timely objection or request for estimation, or has sought to subordinate or otherwise limit recovery, in accordance with the Bankruptcy Code

2.48 - "Petition Date" means November 14, 2023, the date on which the Debtors filed their respective voluntary petitions commencing the Chapter 11 Cases.

2.49 - "Plan" means this joint plan under Chapter 11 of the Bankruptcy Code, together with all exhibits and schedules hereto, as it has been or may be amended, modified, or supplemented from time to time in accordance with sections 1127 and 1193 of the Bankruptcy Code.

2.50 - "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

2.51 - "Priority Wage Claim" means a Claim that is entitled to priority under Section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

2.52 - "Professional" means any professional employed in the Chapter 11 Cases pursuant to section 327 of the Bankruptcy Code or otherwise, and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

2.53 - "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Petition Date and prior to and including the Confirmation Date.

2.54 - "Proof of Claim" means a proof of claim pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

2.55 - "Reorganized GDS, Reorganized Denver, Reorganized Scottsdale, Reorganized Dallas or Reorganized Debtors" means the respective Debtors, or collectively the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date.

2.56 - "Schedules" means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtors in the Chapter 11 Cases under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009.

2.57 - "Secured Claim" means (a) a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the

extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim that is Allowed as a Secured Claim under this Plan.

2.58 - "Unimpaired Claim" means a Claim that is not Impaired under this Plan.

## ARTICLE III.
## HISTORY, EVENTS LEADING TO BANKRUPTCY AND POST-PETITION CHANGES TO OPERATIONS

GDS is a Delaware corporation with its principal place of business in Denver, Colorado. GDS is engaged in business as the agent and manager of detoxification clinics located in Littleton, Colorado, Scottsdale, Arizona, and Dallas, Texas. Pre-petition, GDS was also the agent and manager of clinics in San Antonio, Texas and Las Vegas, Nevada, both of which locations closed pre-petition, and a location in Houston, Texas, which closed post-petition. Denver is a Colorado limited liability company that owns and operates the Littleton, Colorado detoxification clinic. Scottsdale is an Arizona limited liability company that owns and operates a detoxification clinic in Scottsdale, Arizona. Denver and Scottsdale are wholly owned by Dr. Patrick Gallus, however, both clinics are managed in all respected by GDS pursuant to Management Services Agreements. Dallas is similarly managed in all respects by GDS, but the Texas professional limited liability company is wholly owned by Dr. Stephanie Setliff.

Gallus Detox was originally formed in 2011 under the name Prescott Medical Executive Detox in Prescott, Arizona, by Dr. Patrick Gallus. At the time, Dr. Gallus saw a growing need in the market to provide medical detoxification services in order to enable those suffering from addiction to physically withdraw from the substance in a safe, comfortable, supervised manner before progressing to the next step in the individual's addiction treatment. In 2015, the company moved from Prescott to Scottsdale and renamed to Gallus Detox Scottsdale. At the time of the transition, the clinic was maintained as a small, six-bed inpatient facility where patients generally stayed between 4 and 15 nights. The demand for such a facility proved to be substantial, and over the next few years, the clinic would see between 200 and 300 patients per year.

In 2019, SCB Global Healthcare Services, LLC saw the investment potential in Gallus Detox Scottsdale and formed Gallus Detox Services, LLC with the intention of expanding the Gallus brand and opening additional locations. GDS was formed in 2019 and began managing the business and financial affairs of Gallus Detox Scottsdale shortly thereafter. Through GDS, numerous additional locations were opened, all focusing on patients who were typically

| CLASS | STATUS | TREATMENT |
|---|---|---|
| | | of 12% per annum but no payment shall be due and payable until the five (5) year anniversary of the Effective Date of the Plan. |
| Class 8 – Allowed Secured Pre-Petition Claim held by Walter van Woudenberg | Impaired | Allowed in the principal amount owed on the Petition Date with a conversion of accrued but unpaid debt to equity. The Class 8 Claim shall maintain all liens that existed as of the Petition Date and shall continue to accrue interest at a rate of 12% per annum but no payment shall be due and payable until the five (5) year anniversary of the Effective Date of the Plan. |
| Class 9 – Allowed Secured Claims held by Post-Petition Lenders | Impaired | Allowed in the principal amount authorized to be extended to the Debtors by the Court with a conversion of accrued but unpaid debt to equity. The Class 9 Claim shall maintain all liens that are authorized by the Court and continue to accrue interest at a rate of 12% per annum but no payment shall be due and payable until the five (5) year anniversary of the Effective Date of the Plan. |
| Class 10 – Allowed Cure Claims held by Landlords | Impaired | Paid in full over 9 months following the Effective Date of the Plan. |
| Class 11 – Allowed Unsecured Claims of Trade Creditors Against GDS | Impaired | Shall receive 75% of the Combined Net Revenue over a period of 3 years. |
| Class 12 – Allowed Unsecured Claims of Insider Note Holders Against GDS | Impaired | Converted to a combination of New Preferred Shares and New Common Stock in full satisfaction of their claims. Class 12 Interest Holders shall have the option to be treated as a Class 11 Claimant. |
| Class 13 – Holders of Preferred Stock in GDS | Impaired | Terminated as of the Effective Date of the Plan |
| Class 14 – Holders of Common Stock in GDS | Impaired | Terminated as of the Effective Date of the Plan |

*Gallus Detox Denver, LLC*

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class DEI – Allowed Claims Pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) – Wage Claims | Unimpaired | Paid in full on the Effective Date of the Plan. Denver does not anticipate that any Class DEI Claims exist. |
| Class DE2 – Allowed Secured Claim held by AKF, Inc. d/b/a FundKite | Impaired | Treated in accordance with the Stipulation attached as Exhibit F. |
| Class DE3 – Allowed Secured Claim held by Reliance Platinum, LLC d/b/a MYNT Advance | Impaired | Treated in accordance with the Stipulation attached as Exhibit G. |
| Class DE4 – Allowed Secured Claim held by Lionheart Funding, LLC | Impaired | Treated in accordance with the Stipulation attached as Exhibit H. |
| Class DE5 – Allowed Secured Claim held by CloudFund | Impaired | See GDS Class 5 |
| Class DE6 – Allowed Secured Claim held by G&G Funding | Impaired | See GDS Class 6 |
| Class DE7 – Allowed Secured Claims held by Post-Petition Lenders | Impaired | See GDS Class 9 |
| Class DE8 – Allowed General Unsecured Claims against Denver | Impaired | See GDS Class 11 |
| Class DE9 – Interests in Denver | Unimpaired | Maintained by the pre-petition Interest Holder |

*Gallus Detox Scottsdale, LLC*

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class S1 – Allowed Claims Pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) – Wage Claims | Unimpaired | Paid in full on the Effective Date of the Plan. Scottsdale does not anticipate that any Class S1 Claims exist. |
| Class S2 – Allowed Secured Claim held by AKF, Inc. d/b/a FundKite | Impaired | Treated in accordance with the Stipulation |
| Class S3 – Allowed Secured Claim held by Reliance Platinum, LLC d/b/a MYNT Advance | Impaired | Treated in accordance with the Stipulation |
| Class S4 – Allowed Secured Claim held by Lionheart Funding, LLC | Impaired | Treated in accordance with the Stipulation |
| Class S5 – Allowed Secured Claim held by CloudFund | Impaired | See GDS Class 5 |
| Class S6 – Allowed Secured Claim held by G&G Funding | Impaired | See GDS Class 6 |

in the following chart:

| Asset | Estimated Value |
| --- | --- |
| Bank of America (as of December 31, 2023) | $5,913.14 |
| Prepaid Expenses | $74,458.00 |
| Accounts Receivable, Less than 90 Days (as of December 31, 2023) | $145,423 |
| Accounts Receivable, Over 90 Days | $356,996 |
| Inventory and Supplies | $160,587.00 |
| Medications and Supplies | De Minimis |
| Total | $743,377.14 |

The value of the tangible assets is based on book value as of the Petition Date unless otherwise noted. Denver's physical assets are generally comprised of inventory and medical supplies that will have minimal value in a liquidation. Denver also has an additional inventory of medications and supplies that cannot be resold, and would have to be destroyed.

Denver's primary asset in its receivables. The receivables over 90 days old are subject to significant reduction and significantly less likely to be collected. The receivables less than 90 days old are significantly more collectible but will still be subject to the reimbursement claims of patients for insurance reimbursements that would reduce the overall value of the collectible receivables. The receivables may also be subject to reduction based on approvals from insurance companies.

Denver has also listed a number of payments made in the 90 days prior to filing. Denver will investigate whether there are any claims arising under Chapter 5 with respect to such payments that could be recovered for the benefit of creditors. In evaluating whether to bring such claims, Denver will generally evaluate whether any defenses exist and the likelihood of recovery. All claims will be preserved for the benefit of creditors and any funds recovered administered in accordance with the Plan.

*Gallus Detox Scottsdale, LLC*

The values of Scottsdale's assets, owned on the Petition Date unless otherwise noted, are set forth in the following chart:

| Asset | Estimated Value |
| --- | --- |
| Bank of America (as of December 31, 2023) | $9,160.15 |
| Prepaid Expenses | $77,947.00 |
| Accounts Receivable, Less than 90 Days (as of December 31, 2023) | $248,555 |
| Accounts Receivable, Over 90 Days | $365,177 |
| Inventory and Supplies | $53,026.00 |
| Medications and Supplies | De Minimis |
| Total | $753,865.15 |

The asset values set forth above are the book value as of the Petition Date unless otherwise noted. Scottsdale's physical assets are generally comprised of inventory and medical supplies that will have minimal value in a liquidation. Scottsdale also has an additional inventory of medications and supplies that cannot be resold, and would have to be destroyed.

Scottsdale's primary asset in its receivables. The receivables over 90 days old are subject to significant reduction and significantly less likely to be collected. The receivables less than 90 days old are significantly more collectible but will still be subject to the reimbursement claims of patients for insurance reimbursements that would reduce the overall value of the collectible receivables. The receivables may also be subject to reduction based on approvals from insurance companies.

Scottsdale has also listed a number of payments made in the 90 days prior to filing. Scottsdale will investigate whether there are any claims arising under Chapter 5 with respect to such payments that could be recovered for the benefit of creditors. In evaluating whether to bring such claims, Scottsdale will generally evaluate whether any defenses exist and the likelihood of recovery. All claims will be preserved for the benefit of creditors and any funds recovered administered in accordance with the Plan.

*Gallus Detox Dallas, PLLC*

The values of Dallas's assets, owned on the Petition Date unless otherwise noted, are set forth in the following chart:

Expense Claim, and shall continue to remit such payments on the fifteenth of each month thereafter until the respective Administrative Expense Claim is paid in full.

## C. TAX CLAIMS

The Debtors do not believe that any Tax Claims exist. The Internal Revenue Service ("IRS") filed Proof of Claim No. 4-1 asserting a priority claim in the amount of $200 based on unfiled returns for tax year 2022. The Debtors have since filed the 2022 returns, and no taxes are owed based on the Debtors' returns. The Debtors further do not believe that any amount will be owed to the Colorado Department of Revenue, the State of Texas, or the State of Arizona, and no such taxing authorities have filed claims in the Debtors' respective cases.

For the avoidance of a doubt, any priority claim asserted by the IRS or any other taxing authority will be paid in full no later than five (5) years following the Petition Date, and all returns shall be timely filed on a post-petition and post-confirmation basis. Failure to timely file tax returns shall constitute an event of default, and shall be treated as set forth in paragraph 12.15 below.

## ARTICLE VII.
## CLASSIFIED CLAIMS

7.1 - **CLASSES 1, DE1, S1, and DA1. Priority Wage Claims.** Allowed Class 1, DE1, S1, and DA1 Priority Claims shall be paid in full on the Effective Date, unless the holder of a Class 1 claim agrees to an alternative treatment. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. On August 1, 2023, the Court entered an *Order Authorizing (A) Payment of Prepetition Employee Wages and Salaries; and (B) Payment of All Costs and Expenses Incident to the Foregoing Payments* (Docket No. 23). As a result, the Debtors do not anticipate that any Class 1, DE1, S1, or DA1 claims exist.

7.2 - **CLASSES 2, DE2, S2, and DA2. AKF, Inc. d/b/a FundKite ("FundKite").** The Class 2, DE2, S2, and DA2 Secured Claim consist of the Allowed Secured Claim of AKF, Inc. d/b/a FundKite. The FundKite Claim shall be treated and paid in accordance with the Stipulation with FundKite Resolving Objections to Use of Cash Collateral filed at Docket No. 142 and approved by the Court on January 17, 2024 (Docket No. 146), and further attached hereto as Exhibit F.

7.3 - **CLASSES 3, DE3, S3, and DA3. Reliance Platinum, LLC d/b/a MYNT Advance ("MYNT").** The Class 3, DE3, S3, and DA3 Secured Claim consist of the Allowed Secured Claim of MYNT. The MYNT Claim shall be treated and paid in accordance with the Stipulation with MYNT Resolving Objections to Use of Cash Collateral at Docket No. 143 and approved by the Court on January 17, 2024 (Docket No. 147), and further attached hereto as Exhibit G.

7.4 - **CLASSES 4, DE4, S4, and DA4. Lionheart Funding, LLC ("Lionheart").** The Class 4, DE4, S4, and DA4 Secured Claim consist of the Allowed Secured Claim of Lionheart. The Lionheart Claim shall be treated and paid in accordance with the Stipulation with Lionheart Resolving Objections to Use of Cash Collateral at Docket No. 144 and approved by the Court on January 17, 2024 (Docket No. 148), and further attached hereto as Exhibit H.

7.5 - **CLASSES 5, DE5, S5, and DA5. CloudFund.** Classes 5, DE5, S5, and DA5 are comprised of the Secured Claim of CloudFund, which Claim is secured by a fourth position lien on the Debtors' receivables. The CloudFund Claim is impaired by the Plan. The Class 5, DE5, S5, and DA5 Claim will be treated and paid as followed:

a. The CloudFund Claim shall be allowed in the amount of: (i) $250,000, which amount shall constitute the principal amount owed with fully amortized interest through the date of Confirmation of the Plan; or (ii) if CloudFund objects, in an amount to be determined by the Court on or before the Confirmation Date; or (iii) an amount agreed upon by the Debtors and CloudFund on or before the Confirmation Date. Any remaining amounted owed to CloudFund shall be treated as a Class 11 General Unsecured Claim pursuant to 11 U.S.C. § 506;

b. CloudFund will retain all liens that secured its Claim as of the Petition Date. For the avoidance of a doubt, such liens shall attach solely to the receivables of the Debtors and shall not extend to any other assets;

c. The CloudFund Claim will not accrue any additional interest and will be paid in equal monthly installments over a five (5) year term following the one-year anniversary of the Effective Date of the Plan. The first payment on account of the CloudFund Claim will be due on the 15th day of the first full month after the one-year anniversary of the Effective Date and will continue on the 15th date of each month

| Lender | Loan Amount (the "Loans") |
|---|---|
| 2 Street Investments, LLC | $50,000 |
| Stanhope Reed Rigby Advisory, LLC | $15,000 |
| Michael A. Dixon | $1,680 |
| Walter van Woudenberg | $183,320 |
| Mitchell Milias | $200,000 |

The Class 9, DE7, S7, and 7A7 Claims ("DIP Loan Claims") are impaired by the Plan. The DIP Loan Claims shall be treated and paid as follows:

a. The DIP Loan Claims shall be allowed in the principal amount extended to the Debtors in accordance with the Orders authorizing the Debtor to incur such debt, and shall continue to accrue interest at the contractual rate of twelve percent (12%) per annum;

b. The DIP Loan Claims shall continue to retain such liens as those granted under the applicable loan documents;

c. No payment shall be due on account of the DIP Loan Claims until the five (5) year anniversary of the Effective Date of the Plan, at which time all outstanding interest and principal amounts shall become due and payable;

d. On the Effective Date of the Plan, in exchange for the extended maturity date of the Notes and in exchange for any accrued but unpaid interest, the DIP Loan Claims shall receive New Common Stock in the following anticipated percentages:

| Lender | New Common Stock (percentage)[1] |
|---|---|
| 2 Street Investments, LLC | 1.5% |
| Stanhope Reed Rigby Advisory, LLC | 0.45% |
| Michael A. Dixon | 0.05% |
| Walter van Woudenberg | 20% |
| Mitchell Milias | 16% |

7.10 - CLASS 10. Allowed Cure Claim Held by Landlords. Class 10 consists allowed claims of the pre-petition Landlords of GDS asserting that a cure is due for GDS to assume a lease

[1] Contemplates $200,000 additional DIP Loan

pursuant to Paragraph 8.1 below.  GDS anticipates the following Cure Claims will be due on the Effective Date of the Plan:

| Location | Landlord | Cure Amount |
|---|---|---|
| Denver | AWW Estes MOB Owner | $45,000 |
| Scottsdale | KAW Property | $40,000 |
| Dallas | EBD BEMC Mansfield | $100,000 |

The Class 10 Claims shall be paid in equal monthly installments over a nine (9) month period, commencing on the fifteenth (15th) day of the first full month following the Effective Date of the Plan and continuing on the fifteenth (15th) day of each month thereafter until the Cure Claims are paid in full.  The aggregate monthly payment on account of the Cure Claims is anticipated to be $20,555.56.

7.11 - CLASSES 11, DE8, S8, and DA8. Allowed General Unsecured Claims of Trade Creditors. Classes 11, DE8, S8, and DA8 ("Trade Creditor Class") are comprised of the Allowed General Unsecured Claims of Trade Creditors holding unsecured claims against the Debtors.  All Trade Creditors holdings claims against any of the Debtors shall receive the same treatment, regardless of the Debtor against whom the claim is held.  The Trade Creditor Class are treated equally, as GDS is the primary creditor as to all Trade Creditor Claims, and was generally, the contracting party with all Trade Creditors.  The Trade Creditor Class shall be treated and paid as follows:

a. The Trade Creditor Class shall receive a pro-rata distribution equal to seventy-five percent (75%) of the Debtors' Combined Net Revenue calculated on a quarterly basis for a three (3) year period following the date on which the Class 10 Landlord Cure Claims and Administrative Expense Claims are paid in full and the Debtors have contributed $250,000 to the Expense Reserve as set forth in Paragraph 12.5 herein ("Trade Creditor Term");

b. Commencing on the first day of the second calendar quarter following the commencement of the Trade Creditor Term and continuing each quarter thereafter, the Debtors shall set aside an amount equal to (100%) of the prior quarter's Net Combined Revenue with twenty-five percent (25%) going to the Expense Reserve and 75% going to Class 11 Creditors.  By way of example, if the Plan is confirmed in March 2024, and

b. All leases and contracts that are not specifically rejected, including insurance contracts and open customer contracts; and

c. All Management and Services Contracts as between the Debtors.

8.2 - The Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date. For the avoidance of a doubt, to the extent not rejected as of the Effective Date of the Plan, any and all contracts between the Debtors and any Landlord for which a Motion to Assume is not pending shall be deemed to be rejected as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date of the order confirming this Plan.

ARTICLE IX.
FEASIBILITY OF THE PLAN

The Debtors' Plan is feasible based upon the Debtors' prepared projections, attached hereto as Exhibit C, which reflect a reasonable prediction of the Debtors' operations during the term of the Plan. As evidenced by the projections, the Debtors anticipates that their combined income will be positive each year of the Plan, and will generate sufficient revenue to meet its obligations under the Plan. The Debtors have used their best efforts to prepare accurate projections. The Debtors' actual income will fluctuate based on actual sales and changes in the market.

The Debtors' anticipated income is based on its historical financial performance combined with assumptions made to account for increases in revenue and expenses, as well as planned increases to the offerings to patients. Market data has demonstrated that patients looking for the types of services provided by the Debtors are typically looking for expanded offerings beyond just detoxification services, including behavioral therapy and other rehabilitation services. The Debtors are actively pursuing expanding their offerings to include Intensive Out Patient ("IOP") programs, with the first an addition to the Denver clinic which currently only offers medical detoxification services, and may expand the IOP to Dallas and Scottsdale's offerings if the program proves to be successful.

Based on the Debtors' experience in the industry, the Debtors anticipate that they will be able to matriculate a significant portion of the patients received detoxification services into the

IOP program with minimal additional cost, resulting in a significant increase in the Debtors' revenue that will work in harmony with increased post-confirmation marketing efforts. As a result, the Debtors anticipate that its Plan is feasible, and that they will be able to make all required payments under the Plan.

ARTICLE X.
LIQUIDATION ANALYSIS

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtors' assets by one more Trustees who are appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the Debtors; assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

The Debtors' assets are generally subject to liens, and in a conversion to a case under Chapter 7, the secured creditors would seek relief from stay in order to foreclose on the various assets of the Debtors. Because there is no remaining equity for creditors, there would be no assets for a Chapter 7 Trustee to administer. As a result, in a Chapter 7, unsecured creditors would likely receive nothing.

ARTICLE XI.
TAX CONSEQUENCE

The Debtors are not providing tax advice to creditors or interest holders. U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties. Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

ARTICLE XII.
IMPLEMENTATION OF THE PLAN

12.1 - Continued Existence. Unless otherwise provided in the Plan, each Debtor shall, as Reorganized Debtors, continue to exist after the Effective Date of the Plan with the same

12.14 - **Discharge.** If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i) imposed by this Plan; or

    (ii) to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater. The Debtors will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

12.15 - **Contractual Relationship.** The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtors and their creditors. In the event of a default by the Debtors under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against the Debtors for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by any Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by any Debtor must provide written notice to the applicable Debtor and counsel for the Debtor of the claimed default, the notice must provide the applicable Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon the Debtors' failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies under applicable State and Federal Law, including seeking to enforce the terms of the Plan or conversion of the Debtors' case to a case under Chapter 7. In the event the Debtors' Plan is confirmed through a non-consensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as debts are not discharged until the completion of all payments due within the first three years of the Plan.

33

12.16 - **Exculpation.** Except as set forth in this Plan, neither the Debtors, nor any of their agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtors pursuant to the Plan during the pendency of the Debtors' Chapter 11 Cases and through the date of confirmation of the Plan; provided that the foregoing shall have no effect on the liability for a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct. For the avoidance of a doubt, there shall be no liability limitation for the Debtors and their Insiders, for their actions or omissions occurring before the Petition Date, *or after the Confirmation Date*, or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.

12.17 - **Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases which were entered into by the Debtors pre-petition, and not assumed by order of the Bankruptcy Court, are assumed as of the Effective Date of the Plan.

12.18 - **Revestment.** The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan.

12.19 - **Retention of Jurisdiction.** Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a. Determination of the allowability of claims upon objection to such claims by the Debtors-in-Possession or by any other party in interest;

    b. Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

34

## ARTICLE XIII.
### CONFIRMATION REQUEST

The Debtors, as proponents of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. § 1191(a). The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED: February 12, 2024           **GALLUS DETOX SERVICES, INC.**

By: */s/ Warren Olsen*
_____
Warren Olsen, CEO

DATED: February 12, 2024           **GALLUS DETOX DENVER, LLC**

By: */s/ Warren Olsen*
_____
Warren Olsen, as Agent

DATED: February 12, 2024           **GALLUS DETOX SCOTTSDALE, LLC**

By: */s/ Warren Olsen*
_____
Warren Olsen, as Agent

DATED: February 12, 2024           **GALLUS DETOX DALLAS, PLLC**

By: */s/ Warren Olsen*
_____
Warren Olsen, as Agent

APPROVED AS TO FORM:

*s/Keri L. Riley*
_____
Keri L. Riley, #47665
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone: 303- 832-2400
Email: klr@kutnerlaw.com

ATTORNEYS FOR DEBTORS

37

---

## EXHIBITS TO PLAN OF REORGANIZATION

- Exhibit A – List of General Unsecured Trade Creditors of GDS and Unsecured Creditors of Dallas, Scottsdale, and Dallas
- Exhibit B – List of Unsecured Claims Held by Holders of Insider and/or Convertible Notes
- Exhibit C – Projections
- Exhibit D – Fully Diluted Capitalization Table Assuming Full Conversion of Class 12 to Equity
- Exhibit E – Stipulation with AKF, Inc. d/b/a FundKite Resolving Objections to Use Cash Collateral
- Exhibit F – Stipulation with Reliance Platinum, LLC d/b/a MYNT Advance Resolving Objections to Use of Cash Collateral
- Exhibit G – Stipulation with Lionheart Funding, LLC Resolving Objections to Use of Cash Collateral
- Exhibit H – Liquidation Analysis

38

Manu Case:23-15280-JGR Doc#:190 Filed:03/04/24 Entered:03/05/24 09:08:28 Page18 of 29

| Creditor | Amount | Proof of Claim | Description |
|---|---|---|---|
| Bank of America | $8,741.21 | | Credit Card |
| Bank of America | $24,970.34 | | Credit Card |
| Bank of America | $20,694.51 | | Credit Card |
| Badri and Bingham | $8,011.06 | | Legal Services |
| Bachi Diagnostics | $5,780.00 | | Scheduled as Contingent and Unliquidated |
| AT&T | $1,591.31 | | Technology/Communications Vendor |
| Architectural Resources | $80,250.00 | | Architect |
| Angela Welcher, MD | $- | | Scheduled as Contingent and Unliquidated |
| Alison Bird | $11,120.00 | | Legal Services |
| Aetna Grass | $357.41 | | Scheduled as Contingent and Unliquidated |
| Aegon | $2,624.86 | | Scheduled as Contingent and Unliquidated |
| ADT | $37.00 | | Security Services |
| Ad Resources | $563.69 | | Marketing Vendor |
| ACC Business | $612.80 | | Technology/Communications Vendor |
| AC Merchandising | $5,000.00 | | Digital Marketing |
| WorkPlace Elements | $17,837.26 | $17,837.26 (Proof of Claim No. 6-1) | |
| Modofy, Inc. | $1,214.71 | $1,214.71 (Proof of Claim No. 18-1) | |
| Lynn Bigam | $25,000.00 | $25,000 (Proof of Claim No. 18-1) | |
| | $2,396,344.84 | | |

| Creditor | Amount | Proof of Claim | Description |
|---|---|---|---|
| Manchester Mills | $2,778.82 | | Scheduled as Contingent and Unliquidated |
| Lumen | $307.51 | | Scheduled as Contingent and Unliquidated |
| Lochness | $1,487.12 | | Scheduled as Contingent and Unliquidated |
| Lindsey Avenach | $1,200.00 | | Scheduled as Contingent and Unliquidated |
| Lobson Home Automation | $6,229.92 | | Technology/Communications Vendor |
| LitGroup | $11,941.97 | | Medical Service/Supplies |
| LinCorp | $60,373.55 | | Scheduled as Contingent and Unliquidated |
| Lillium Property Holdings | $23,742.40 | | Landlord (Scottsdale) |
| JJ Home Repairs and More | $5,392.30 | | Scheduled as Contingent and Unliquidated |
| Ivan Mountain | $14,002.58 | | General Services |
| HPH Corporation | $4,500.00 | | Insurance |
| Innovative Career Consulting | $294.20 | | Staffing |
| INA | $2,819.11 | | Scheduled as Contingent and Unliquidated |
| Higher Ground Landscaping | $200.00 | $8,387.20 (Proof of Claim No. 2-1) | Insurance Broker |
| High Touch Technologies | $8,612.20 | | Scheduled as Contingent and Unliquidated |
| Hermann, Laura | $7,200.00 | $7,200.00 (Proof of Claim No. 15-2) | Connect Business Development |
| Heath Temple | $35,520.01 | | Scheduled as Contingent and Unliquidated |
| Grant Bilbakani MD | $1,000.00 | $1,000.00 | Consulting Physician |
| Fusion 92 | $- | | Digital Marketing |
| FXwater | $336.02 | | Scheduled as Contingent and Unliquidated |
| F2920M Property Management | $195,395.21 | $115,257.13 (Proof of Claim No. 14) | Landlord (Houston) |
| Emerson5015 SA Hausmann | $97,280.43 | $283,814.23 (Proof of Claim No. 15,2) | Landlord (San Antonio) |
| Edward Werman | $18,750.00 | $18,750.00 | Director (Board Fee) |
| EBO BDAC Mansfield | $133,744.48 | $162,713.71 (Proof of Claim No. 11-1) | Landlord (Dallas) |
| DK Chug Ranch LLC | $117,336.45 | $286,422.67 (Proof of Claim No. 15-2) | Landlord (Las Vegas) |
| Comcast | $- | | Scheduled as Contingent and Unliquidated |
| Collaborate MD | $- | | Insurance Billing Software |
| CLIA Laboratory Program | $180.00 | | Scheduled as Contingent and Unliquidated |
| Clark County Assessor | $3,228.64 | | Scheduled as Contingent and Unliquidated |
| Century Link | $30.21 | $50.21 (Scottsdale Proof of Claim No. 2) | Landlord |
| CBS Technologies | $199.25 | | Scheduled as Contingent and Unliquidated |
| Cardinal Health | $75.29 | | Registered Agents |
| Capital Services | $2,600.00 | | Landlord - potentially subject to setoff |
| Capitol Center | $82,506.45 | $103,465.58 (Proof of Claim No. 9-1) | |
| California Franchise Tax Board | $1,615.00 | | |
| C2 Systems | $69,259.13 | | IT Consultant |
| Illusion | $30,000.00 | | Technology/Data |
| Brian Shear, MD | $11,005.00 | | Legal Services |
| Bold Legal | $25,441.78 | | Scheduled as Contingent and Unliquidated |
| Bigers, Lynn | $7,111.96 | | Credit Card |
| Bank of America | $16,698.20 | | Credit Card |
| Bank of America | $13,466.30 | | Credit Card |

Gallus Reorg
Monthly Budget

| | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **IN-PATIENT MEDICAL DETOX SERVICES ("IP Detox")** | | | | | | | | | | | |
| Gross Cash In: IP Detox | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 204,426 | 218,525 | 211,475 | 218,525 | 211,475 | 218,525 | 218,525 | 211,475 | 218,525 | 211,475 | 218,525 |
| Gallus Detox Denver, LLC | 204,426 | 218,525 | 211,475 | 218,525 | 211,475 | 218,525 | 218,525 | 211,475 | 218,525 | 211,475 | 218,525 |
| Gallus Detox Dallas, PLLC | 125,000 | 150,000 | 195,000 | 218,525 | 211,475 | 218,525 | 218,525 | 211,475 | 218,525 | 211,475 | 218,525 |
| Total Gross Cash In: IP Detox | 533,852 | 587,049 | 617,951 | 655,574 | 634,426 | 655,574 | 655,574 | 634,426 | 655,574 | 634,426 | 655,574 |
| Cash Out: IP Detox | | | | | | | | | | | |
| Total Cash Out - IP Detox: Gallus Detox Scottsdale, LLC | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) | (146,000) |
| Total Cash Out - IP Detox: Gallus Detox Denver, LLC | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) | (154,667) |
| Total Cash Out - IP Detox: Gallus Detox Dallas, PLLC | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) | (151,333) |
| Gross Cash In/(Out): IP Detox | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 58,426 | 72,525 | 65,475 | 72,525 | 65,475 | 72,525 | 72,525 | 65,475 | 72,525 | 65,475 | 72,525 |
| Gallus Detox Denver, LLC | 49,760 | 63,858 | 56,809 | 63,858 | 56,809 | 63,858 | 63,858 | 56,809 | 63,858 | 56,809 | 63,858 |
| Gallus Detox Dallas, PLLC | (26,333) | (1,333) | 43,667 | 67,191 | 60,142 | 67,191 | 67,191 | 60,142 | 67,191 | 60,142 | 67,191 |
| Total Gross Cash In/(Out): IP Detox | 81,852 | 135,049 | 165,951 | 203,574 | 182,426 | 203,574 | 203,574 | 182,426 | 203,574 | 182,426 | 203,574 |
| Deductions to Gross Cash In: IP Detox | | | | | | | | | | | |
| Credit Card Processing Fees | (4,600) | (4,917) | (4,758) | (4,917) | (4,758) | (4,917) | (4,917) | (4,758) | (4,917) | (4,758) | (4,917) |
| Insurance Billing Fees | (14,167) | (15,144) | (14,655) | (15,144) | (14,655) | (15,144) | (15,144) | (14,655) | (15,144) | (14,655) | (15,144) |
| Net Cash In/(Out) Before Corporate Overhead: IP Detox | 63,086 | 114,989 | 146,537 | 183,513 | 163,013 | 183,513 | 183,513 | 163,013 | 183,513 | 163,013 | 183,513 |
| **INTENSIVE OUTPATIENT SERVICES ("IOP")** | | | | | | | | | | | |
| Gross Cash In: IOP | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | - | - | - | - | - | - | - | 6,250 | 12,500 | 18,750 | 25,000 |
| Gallus Detox Denver, LLC | - | - | - | - | 6,250 | 12,500 | 18,750 | 25,000 | 25,000 | 25,000 | 25,000 |
| Gallus Detox Dallas, PLLC | - | - | - | - | - | - | - | - | - | - | - |
| Total Gross Cash In: IOP | - | - | - | - | 6,250 | 12,500 | 18,750 | 31,250 | 37,500 | 43,750 | 50,000 |
| Cash Out: IOP | | | | | | | | | | | |
| Total IOP Cash Out: Gallus Detox Scottsdale, LLC | - | - | - | - | - | (2,000) | (2,000) | (6,000) | (6,000) | (6,000) | (6,000) |
| Total IOP Cash Out: Gallus Detox Denver, LLC | - | - | (2,000) | (2,000) | (6,000) | (6,000) | (6,000) | (6,000) | (6,000) | (6,000) | (6,000) |
| Total IOP Cash Out: Gallus Detox Dallas, PLLC | - | - | - | - | - | - | - | - | - | (2,000) | (2,000) |
| Gross Cash In/(Out): IOP | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | - | - | - | - | - | (2,000) | (2,000) | 250 | 6,500 | 12,750 | 19,000 |
| Gallus Detox Denver, LLC | - | - | (2,000) | (2,000) | 250 | 6,500 | 12,750 | 19,000 | 19,000 | 19,000 | 19,000 |
| Gallus Detox Dallas, PLLC | - | - | - | - | - | - | - | - | - | (2,000) | (2,000) |
| Total Gross Cash In/(Out): IOP | - | - | (2,000) | (2,000) | 250 | 4,500 | 10,750 | 19,250 | 25,500 | 29,750 | 36,000 |
| Deductions to Gross Cash In: IOP | | | | | | | | | | | |
| Credit Card Processing Fees | - | - | - | - | (47) | (94) | (141) | (234) | (281) | (328) | (375) |
| Insurance Billing Fees | - | - | - | - | (144) | (289) | (433) | (722) | (866) | (1,011) | (1,155) |
| Net Cash In/(Out) Before Corporate Overhead: IOP | - | - | (2,000) | (2,000) | 59 | 4,118 | 10,176 | 18,294 | 24,353 | 28,411 | 34,470 |
| **TOTAL NET CASH IN/(OUT) BEFORE CORPORATE OVERHEAD: IP DETOX + IOP** | 63,086 | 114,989 | 144,537 | 181,513 | 163,072 | 187,631 | 193,689 | 181,307 | 207,866 | 191,424 | 217,983 |

# Exhibit C

Gallus Reorg
Monthly Budget

| | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH OUT: CORPORATE OVERHEAD** | | | | | | | | | | | | |
| Total Labor | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) | (139,648) |
| Marketing (Non-Labor) | | | | | | | | | | | | |
| Digital Marketing | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) |
| Business Development Expenses | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) |
| IOP-Related Additional Marketing | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) |
| Total Marketing (Non-Labor) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) | (10,815) |
| General & Administrative | | | | | | | | | | | | |
| Accounting | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) | (5,150) |
| 3rd Party IT Support | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) | (6,438) |
| Professional Services | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) |
| Insurance | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) | (10,300) |
| Communications & Technology | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) |
| Subscriptions | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) | (1,288) |
| Assumed SBA Loans | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) | (3,090) |
| Chief Medical Officer Contract | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| Other G&A | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) | (2,575) |
| Total General & Administrative | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) | (43,990) |
| Total Cash Out: Corporate Overhead | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) | (194,453) |
| Cash Available from Ongoing Operations | 67,343 | 1,371 | 67,343 | 45,352 | 67,343 | 45,352 | 67,343 | 67,343 | 45,352 | 67,343 | 45,352 | 67,343 |
| Cash Out: Payments to Secured Creditors | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) | (30,534) |
| Cash Available after payments to secured creditors | 36,809 | (29,163) | 36,809 | 14,818 | 36,809 | 14,818 | 36,809 | 36,809 | 14,818 | 36,809 | 14,818 | 36,809 |
| **CASH OUT: CASH NEEDS FOR ORDERED PAYMENTS AND CAPITAL EXPENDITURES** | | | | | | | | | | | | |
| Catch up Rent Payments | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | (4,444) | (4,444) | (4,444) | (4,444) | (4,444) | | | | | | | |
| Gallus Detox Denver, LLC | (6,222) | (6,222) | (6,222) | (6,222) | (6,222) | | | | | | | |
| Gallus Detox Dallas, PLLC | | | | | | | | | | | | |
| Court Ordered Payments to Houston landlord | | | | | | | | | | | | |
| Capital Expenditures: Ongoing Operations | | | (12,500) | | | (12,500) | | | (12,500) | | | (12,500) |
| Capital Expenditures: Scottsdale clinic Move in 2025 | | | | | | | | | | (25,000) | | |
| Chapter 11 Administrative Fees | | | | | | | | | | | | |
| Medical Ombudsman | (1,250) | (1,250) | (1,250) | | | | | | | | | |
| Subchapter V Trustee | (625) | (625) | (625) | | | | | | | | | |
| Total Cash Out: Other | (12,542) | (12,542) | (25,042) | (10,667) | (10,667) | (12,500) | - | - | (12,500) | (25,000) | - | (12,500) |
| DISPOSABLE MONTHLY INCOME | 24,267 | (41,705) | 11,767 | 4,152 | 26,142 | 2,318 | 36,809 | 36,809 | 2,318 | 11,809 | 14,818 | 24,309 |

Gallus Reorg
Monthly Budget

| | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IN-PATIENT MEDICAL DETOX SERVICES ("IP Detox")** | | | | | | | | | | | | |
| Gross Cash In: IP Detox | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 276,027 | 249,315 | 276,027 | 267,123 | 276,027 | 267,123 | 276,027 | 276,027 | 267,123 | 276,027 | 267,123 | 276,027 |
| Gallus Detox Denver, LLC | 242,615 | 219,136 | 242,615 | 234,789 | 242,615 | 234,789 | 242,615 | 242,615 | 234,789 | 242,615 | 234,789 | 242,615 |
| Gallus Detox Dallas, PLLC | 242,615 | 219,136 | 242,615 | 234,789 | 242,615 | 234,789 | 242,615 | 242,615 | 234,789 | 242,615 | 234,789 | 242,615 |
| Total Gross Cash In: IP Detox | 761,258 | 687,588 | 761,258 | 736,701 | 761,258 | 736,701 | 761,258 | 761,258 | 736,701 | 761,258 | 736,701 | 761,258 |
| Cash Out: IP Detox | | | | | | | | | | | | |
| Total Cash Out - IP Detox: Gallus Detox Scottsdale, LLC | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) | (173,854) |
| Total Cash Out - IP Detox: Gallus Detox Denver, LLC | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) | (164,086) |
| Total Cash Out - IP Detox: Gallus Detox Dallas, PLLC | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) | (160,550) |
| Gross Cash In/(Out): IP Detox | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 102,173 | 75,461 | 102,173 | 93,269 | 102,173 | 93,269 | 102,173 | 102,173 | 93,269 | 102,173 | 93,269 | 102,173 |
| Gallus Detox Denver, LLC | 78,529 | 55,051 | 78,529 | 70,703 | 78,529 | 70,703 | 78,529 | 78,529 | 70,703 | 78,529 | 70,703 | 78,529 |
| Gallus Detox Dallas, PLLC | 82,066 | 58,587 | 82,066 | 74,240 | 82,066 | 74,240 | 82,066 | 82,066 | 74,240 | 82,066 | 74,240 | 82,066 |
| Total Gross Cash In/(Out): IP Detox | 262,769 | 189,099 | 262,769 | 238,212 | 262,769 | 238,212 | 262,769 | 262,769 | 238,212 | 262,769 | 238,212 | 262,769 |
| Deductions to Gross Cash In: IP Detox | | | | | | | | | | | | |
| Credit Card Processing Fees | (5,709) | (5,157) | (5,709) | (5,525) | (5,709) | (5,525) | (5,709) | (5,709) | (5,525) | (5,709) | (5,525) | (5,709) |
| Insurance Billing Fees | (17,585) | (15,883) | (17,585) | (17,018) | (17,585) | (17,018) | (17,585) | (17,585) | (17,018) | (17,585) | (17,018) | (17,585) |
| Net Cash In/(Out) Before Corporate Overhead: IP Detox | 239,474 | 168,058 | 239,474 | 215,669 | 239,474 | 215,669 | 239,474 | 239,474 | 215,669 | 239,474 | 215,669 | 239,474 |
| **INTENSIVE OUTPATIENT SERVICES ("IOP")** | | | | | | | | | | | | |
| Gross Cash In: IOP | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 |
| Gallus Detox Denver, LLC | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 |
| Gallus Detox Dallas, PLLC | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 | 26,010 |
| Total Gross Cash In: IOP | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 | 78,030 |
| Cash Out: IOP | | | | | | | | | | | | |
| Total IOP Cash Out: Gallus Detox Scottsdale, LLC | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) |
| Total IOP Cash Out: Gallus Detox Denver, LLC | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) |
| Total IOP Cash Out: Gallus Detox Dallas, PLLC | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) | (7,426) |
| Gross Cash In/(Out): IOP | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 |
| Gallus Detox Denver, LLC | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 |
| Gallus Detox Dallas, PLLC | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 | 18,584 |
| Total Gross Cash In/(Out): IOP | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 | 55,751 |
| Deductions to Gross Cash In: IOP | | | | | | | | | | | | |
| Credit Card Processing Fees | (585) | (585) | (585) | (585) | (585) | (585) | (585) | (585) | (585) | (585) | (585) | (585) |
| Insurance Billing Fees | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) | (1,802) |
| Net Cash In/(Out) Before Corporate Overhead: IOP | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 | 53,363 |
| TOTAL NET CASH IN/(OUT) BEFORE CORPORATE OVERHEAD: IP DETOX + IOP | 292,838 | 221,422 | 292,838 | 269,032 | 292,838 | 269,032 | 292,838 | 292,838 | 269,032 | 292,838 | 269,032 | 292,838 |

Gallus Reorg
Monthly Budget

| | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH OUT: CORPORATE OVERHEAD** | | | | | | | | | | | | |
| Total Labor | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) | (187,551) |
| Marketing (Non-Labor) | | | | | | | | | | | | |
| Digital Marketing | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) |
| Business Development Expenses | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) |
| IOP-Related Additional Marketing | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) |
| Total Marketing (Non-Labor) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) | (11,474) |
| General & Administrative | | | | | | | | | | | | |
| Accounting | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) | (5,464) |
| 3rd Party IT Support | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) | (6,830) |
| Professional Services | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) |
| Insurance | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) | (10,927) |
| Communications & Technology | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) |
| Subscriptions | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) | (1,366) |
| Assumed SBA Loans | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) | (3,278) |
| Chief Medical Officer Contract | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| Other G&A | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) | (2,732) |
| Total General & Administrative | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) | (46,060) |
| Total Cash Out: Corporate Overhead | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) | (245,085) |
| Cash Available from Ongoing Operations | 62,046 | (11,869) | 62,046 | 37,408 | 62,046 | 37,408 | 62,046 | 62,046 | 37,408 | 62,046 | 37,408 | 62,046 |
| Cash Out: Payments to Secured Creditors | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) | (9,867) |
| Cash Available after payments to secured creditors | 52,179 | (21,736) | 52,179 | 27,541 | 52,179 | 27,541 | 52,179 | 52,179 | 27,541 | 52,179 | 27,541 | 52,179 |
| **CASH OUT: CASH NEEDS FOR ORDERED PAYMENTS AND CAPITAL EXPENDITURES** | | | | | | | | | | | | |
| Catch up Rent Payments | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | | | | | | | | | | | | |
| Gallus Detox Denver, LLC | | | | | | | | | | | | |
| Gallus Detox Dallas, PLLC | | | | | | | | | | | | |
| Court Ordered Payments to Houston landlord | | | | | | | | | | | | |
| Capital Expenditures: Ongoing Operations | | | (12,500) | | | (12,500) | | | (12,500) | | | (12,500) |
| Capital Expenditures: Scottsdale clinic Move in 2025 | (25,000) | | | (25,000) | | | | | | | | |
| Chapter 11 Administrative Fees | | | | | | | | | | | | |
| Medical Ombudsman | | | | | | | | | | | | |
| Subchapter V Trustee | | | | | | | | | | | | |
| Total Cash Out: Other | (25,000) | - | (12,500) | (25,000) | - | (12,500) | - | - | (12,500) | - | - | (12,500) |
| DISPOSABLE MONTHLY INCOME | 27,179 | (21,736) | 39,679 | 2,541 | 52,179 | 15,041 | 52,179 | 52,179 | 15,041 | 52,179 | 27,541 | 39,679 |

Gallus Reorg
Monthly Budget

| | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IN-PATIENT MEDICAL DETOX SERVICES ("IP Detox")** | | | | | | | | | | | | |
| Gross Cash In: IP Detox | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 294,880 | 275,855 | 294,880 | 285,367 | 294,880 | 285,367 | 294,880 | 294,880 | 285,367 | 294,880 | 285,367 | 294,880 |
| Gallus Detox Denver, LLC | 259,186 | 242,464 | 259,186 | 250,825 | 259,186 | 250,825 | 259,186 | 259,186 | 250,825 | 259,186 | 250,825 | 259,186 |
| Gallus Detox Dallas, PLLC | 259,186 | 242,464 | 259,186 | 250,825 | 259,186 | 250,825 | 259,186 | 259,186 | 250,825 | 259,186 | 250,825 | 259,186 |
| Total Gross Cash In: IP Detox | 813,251 | 760,783 | 813,251 | 787,017 | 813,251 | 787,017 | 813,251 | 813,251 | 787,017 | 813,251 | 787,017 | 813,251 |
| Cash Out: IP Detox | | | | | | | | | | | | |
| Total Cash Out - IP Detox: Gallus Detox Scottsdale, LLC | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) | (181,789) |
| Total Cash Out - IP Detox: Gallus Detox Denver, LLC | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) | (174,079) |
| Total Cash Out - IP Detox: Gallus Detox Dallas, PLLC | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) | (170,327) |
| Gross Cash In/(Out): IP Detox | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 113,090 | 94,066 | 113,090 | 103,578 | 113,090 | 103,578 | 113,090 | 113,090 | 103,578 | 113,090 | 103,578 | 113,090 |
| Gallus Detox Denver, LLC | 85,107 | 68,385 | 85,107 | 76,746 | 85,107 | 76,746 | 85,107 | 85,107 | 76,746 | 85,107 | 76,746 | 85,107 |
| Gallus Detox Dallas, PLLC | 88,859 | 72,137 | 88,859 | 80,498 | 88,859 | 80,498 | 88,859 | 88,859 | 80,498 | 88,859 | 80,498 | 88,859 |
| Total Gross Cash In/(Out): IP Detox | 287,055 | 234,588 | 287,055 | 260,822 | 287,055 | 260,822 | 287,055 | 287,055 | 260,822 | 287,055 | 260,822 | 287,055 |
| Deductions to Gross Cash In: IP Detox | | | | | | | | | | | | |
| Credit Card Processing Fees | (6,099) | (5,706) | (6,099) | (5,903) | (6,099) | (5,903) | (6,099) | (6,099) | (5,903) | (6,099) | (5,903) | (6,099) |
| Insurance Billing Fees | (18,786) | (17,574) | (18,786) | (18,180) | (18,786) | (18,180) | (18,786) | (18,786) | (18,180) | (18,786) | (18,180) | (18,786) |
| Net Cash In/(Out) Before Corporate Overhead: IP Detox | 262,170 | 211,308 | 262,170 | 236,739 | 262,170 | 236,739 | 262,170 | 262,170 | 236,739 | 262,170 | 236,739 | 262,170 |
| **INTENSIVE OUTPATIENT SERVICES ("IOP")** | | | | | | | | | | | | |
| Gross Cash In: IOP | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 |
| Gallus Detox Denver, LLC | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 |
| Gallus Detox Dallas, PLLC | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 | 27,061 |
| Total Gross Cash In: IOP | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 | 81,182 |
| Cash Out: IOP | | | | | | | | | | | | |
| Total IOP Cash Out: Gallus Detox Scottsdale, LLC | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) |
| Total IOP Cash Out: Gallus Detox Denver, LLC | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) |
| Total IOP Cash Out: Gallus Detox Dallas, PLLC | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) | (7,879) |
| Gross Cash In/(Out): IOP | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 |
| Gallus Detox Denver, LLC | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 |
| Gallus Detox Dallas, PLLC | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 | 19,182 |
| Total Gross Cash In/(Out): IOP | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 | 57,547 |
| Deductions to Gross Cash In: IOP | | | | | | | | | | | | |
| Credit Card Processing Fees | (609) | (609) | (609) | (609) | (609) | (609) | (609) | (609) | (609) | (609) | (609) | (609) |
| Insurance Billing Fees | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) | (1,875) |
| Net Cash In/(Out) Before Corporate Overhead: IOP | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 | 55,063 |
| TOTAL NET CASH IN/(OUT) BEFORE CORPORATE OVERHEAD: IP DETOX + IOP | 317,233 | 266,370 | 317,233 | 291,801 | 317,233 | 291,801 | 317,233 | 317,233 | 291,801 | 317,233 | 291,801 | 317,233 |

Gallus Reorg
Monthly Budget

| | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH OUT: CORPORATE OVERHEAD** | | | | | | | | | | | | |
| Total Labor | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) | (195,825) |
| Marketing (Non-Labor) | | | | | | | | | | | | |
| Digital Marketing | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) |
| Business Development Expenses | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) |
| IOP-Related Additional Marketing | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) |
| Total Marketing (Non-Labor) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) | (12,172) |
| General & Administrative | | | | | | | | | | | | |
| Accounting | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) | (5,796) |
| 3rd Party IT Support | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) | (7,245) |
| Professional Services | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) |
| Insurance | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) | (11,593) |
| Communications & Technology | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) |
| Subscriptions | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) | (1,449) |
| Assumed SBA Loans | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) | (3,478) |
| Chief Medical Officer Contract | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| Other G&A | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) | (2,898) |
| Total General & Administrative | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,256) | (48,756) |
| Total Cash Out: Corporate Overhead | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) | (256,253) |
| Cash Available from Ongoing Operations | 75,887 | (3,293) | 75,887 | 49,494 | 75,887 | 49,494 | 75,887 | 75,887 | 49,494 | 75,887 | 49,494 | 75,887 |
| Cash Out: Payments to Secured Creditors | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Cash Available after payments to secured creditors | 70,887 | (8,293) | 70,887 | 44,494 | 70,887 | 44,494 | 70,887 | 70,887 | 44,494 | 70,887 | 44,494 | 70,887 |
| **CASH OUT: CASH NEEDS FOR ORDERED PAYMENTS AND CAPITAL EXPENDITURES** | | | | | | | | | | | | |
| Catch up Rent Payments | | | | | | | | | | | | |
| Gallus Detox Scottsdale, LLC | | | | | | | | | | | | |
| Gallus Detox Denver, LLC | | | | | | | | | | | | |
| Gallus Detox Dallas, PLLC | | | | | | | | | | | | |
| Court Ordered Payments to Houston landlord | | | | | | | | | | | | |
| Capital Expenditures: Ongoing Operations | | | (12,500) | | | (12,500) | | | (12,500) | | | (12,500) |
| Capital Expenditures: Scottsdale clinic Move in 2025 | | | | | | | | | | | | |
| Chapter 11 Administrative Fees | | | | | | | | | | | | |
| Medical Ombudsman | | | | | | | | | | | | |
| Subchapter V Trustee | | | | | | | | | | | | |
| Total Cash Out: Other | - | - | (12,500) | - | - | (12,500) | - | - | (12,500) | - | - | (12,500) |
| DISPOSABLE MONTHLY INCOME | 70,887 | (8,293) | 58,387 | 44,494 | 70,887 | 31,994 | 70,887 | 70,887 | 31,994 | 70,887 | 44,494 | 58,387 |

# Exhibit D

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:

GALLUS DETOX SERVICES, INC.
EIN: 88-2490456

Debtor.

Case No. 23-15280-JGR
Chapter 11

GALLUS DETOX DENVER, LLC
EIN: 84-3421544

Debtor.

Case No. 23-15283-JGR
Chapter 11

GALLUS DETOX SCOTTSDALE, LLC
EIN: 47-2515577

Debtor.

Case No. 23-15284-JGR
Chapter 11

GALLUS DETOX DALLAS, PLLC
EIN: 87-2068937

Debtor.

Case No. 23-15285-JGR
Chapter 11

**STIPULATION RESOLVING OBJECTIONS TO USE OF CASH COLLATERAL**

The Debtors, Gallus Detox Services, Inc. ("GDS"), Gallus Detox Denver, LLC ("Denver"), Gallus Detox Scottsdale, LLC ("Scottsdale"), and Gallus Detox Dallas, PLLC ("Dallas" and together "Debtors"), and AKF, Inc. d/b/a FundKite ("FundKite"), by and through their undersigned attorneys, state their Resolving FundKite's Objection to Use of Cash Collateral as follows:

**BACKGROUND**

1.    The Debtors filed their respective Voluntary Petitions pursuant to Chapter 11 of the Bankruptcy Code on November 14, 2023. The cases are jointly administered under Case No. 23-15280-JGR, and the Debtors remain debtors in possession and are in operation of its business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182.

2.    GDS is a Delaware corporation with its principal place of business located in Denver, Colorado. GDS is engaged in business as the agent and manager of detoxification clinics located in Denver, Colorado, Scottsdale, Arizona, and Dallas and Houston, Texas. Denver,

Scottsdale, and Dallas are managed by GDS in all respects, including employee management, financial management, and operational management.

3.    On August 1, 2023, Scottsdale and Dallas entered into respective "Revenue Purchase Agreements" with FundKite.  On August 2, 2023, Denver entered into a "Revenue Purchase Agreement" (collectively the "FundKite Agreements") with FundKite.

4.    On November 15, 2023, the Debtors filed their Motion for Authority to Use Cash Collateral, seeking to use funds in which FundKite and other parties asserted an interest.

5.    FundKite filed their Objection to the Debtors' Motion for Authority to Use Cash Collateral on November 20, 2023.

6.    The Court entered an Interim Order Authorizing Use of Cash Collateral on November 22, 2023, setting a final hearing on the Debtors' use of cash collateral and ordering the Debtors to escrow funds that may be subject to FundKite's interest pending a determination as to the issues between the Parties.

7.    To avoid the time, expense, and uncertainty of further litigation and resolve issues between the Parties, the Debtors and FundKite stipulate and agree as follows:

**STIPULATION**

8.    FundKite shall have an allowed secured claim in the amount of $498,000, secured by accounts and the proceeds thereof to the extent of the pre-petition FundKite Agreements and any applicable security interests granted therein and perfected by virtue of a subsequent pre-petition UCC-1 Financing Statement.

9.    The Debtors shall remit payments as follows:

a.    $120,000 from January 1, 2024 comprised of one monthly payment on January 1, 2024 in the amount of $10,000 and 48 weekly payments in the amount of $2,292 beginning on February 1, 2024 and continuing weekly thereafter.;

b.    52 weekly payments in the amount of $3,461.54 beginning on January 1, 2025;

c.    26 weekly payments in the amount of $5,000.23 beginning on January 1, 2026; and

d.    One payment due on or about July 1, 2026 in the amount of $67,993.98.

10.    If the Debtor fails to make any such payment in the amount and manner provided in Paragraph 9, FundKite shall provide written notice by mail and electronic mail to the Debtors and undersigned counsel. The Debtors shall have a ten (10) day period in which to cure any alleged defaults and if the Debtors fail to cure the asserted default, FundKite may proceed to exercise any

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, I served a complete copy of the foregoing **STIPULATION RESOLVING OBJECTIONS TO USE OF CASH COLLATERAL** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Alison Goldenberg, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294
Alison.Goldenberg@usdoj.gov

Joli A. Lofstedt, Esq.
Subchapter V Trustee
P.O. Box 270561
Louisville, CO 80027
joli@jaltrustee.com

Shanna M. Kaminski, Esq.
Kaminski Law, PLLC
P.O. Box 247
Grass Lake, Michigan 49240
skaminski@kaminskilawpllc.com

Theodore J. Hartl, Esq.
Ballard Spahr, LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596
hartlt@ballardspahr.com

Christopher C. Simpson, Esq.
Osborn Maledon P.A.
2929 North Central Avenue
Suite 2000
Phoenix, AZ 85012
csimpson@omlaw.com

C. Daniel Roberts, Esq.
C. Daniel Roberts, P.C.
P.O. Box 6368
Austin, TX 78762
droberts@cdrlaw.net

/s/Vicky Martina
Vicky Martina

Scottsdale, and Dallas are managed by GDS in all respects, including employee management, financial management, and operational management.

3. On August 22, 2023, the Debtors entered into a "Standard Merchant Cash Advance Agreement" with MYNT ("MYNT Agreement").

4. On November 15, 2023, the Debtors filed their Motion for Authority to Use Cash Collateral, seeking to use funds in which MYNT and other parties asserted an interest.

5. MYNT filed their Objection to the Debtors' Motion for Authority to Use Cash Collateral on November 20, 2023.

6. The Court entered an Interim Order Authorizing Use of Cash Collateral on November 22, 2023, setting a final hearing on the Debtors' use of cash collateral and ordering the Debtors to escrow funds that may be subject to MYNT's interest pending a determination as to the issues between the Parties.

7. To avoid the time, expense, and uncertainty of further litigation and resolve issues between the Parties, the Debtors and MYNT stipulate and agree as follows:

STIPULATION

8. MYNT shall have an allowed secured claim in the amount of $292,000, secured by receivables of the Debtors to the extent of the pre-petition MYNT Agreements and any applicable security interests granted therein and perfected by virtue of a subsequent UCC-1 Financing Statement.

9. As adequate protection of MYNT's interest and payment of its claim, the Debtors shall pay MYNT's claim in full over sixty months beginning on January 1, 2024 comprised of weekly payments in the amount of $1,123.08.

10. In the event of a default, MYNT shall provide written notice by mail and electronic mail to the Debtors and undersigned counsel. The Debtors shall have a ten (10) day period in which to cure any alleged default and if the Debtors fail to cure the asserted default, MYNT may proceed to exercise any applicable rights, including seeking entry of an Order from the Bankruptcy Court revoking the use of cash collateral.

11. The Debtors shall incorporate the terms of this Stipulation, either by reference or in their entirety, into any proposed Plan of Reorganization.

12. Notwithstanding any rights granted to MYNT with respect to guarantors, absent any defaults under this Stipulation, MYNT shall forbear from exercising any rights against any

and all guarantors under the MYNT Agreements until the conclusion of the payments under this Stipulation.

13. Subject to incorporating this Stipulation into a Plan of Reorganization, this Stipulation resolves any and all issues between the Parties, including, without limitation, any asserted objections to any claims, objections to confirmation of any proposed Plan of Reorganization, Adversary Proceedings, declaratory judgment actions, or objections to the use of cash collateral.

14. While this Stipulation intends to resolve any and all issues, MYNT reserves the right to object to the Plan of Reorganization to the extent the Plan of Reorganization does not incorporate the terms of this Stipulation or the Debtors otherwise default on the terms of this Stipulation.

15. Nothing contained herein shall establish nor limit any parties' right to assert or argue the nature, extent, validity, or priority of any lien or interest under Section 506(a) of the Bankruptcy Code, nor shall it constitute an admission, waiver, confession or release as to any argument or legal rights the Debtors may have as to the nature of the MYNT Agreements.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, authorizing the Debtor's use of cash collateral in accordance with this Stipulation, and for such further and additional relief as to the Court may appear proper.

DATED: January 16, 2024

Respectfully submitted,

By: _/s/ Keri L Riley_
Keri L. Riley, #47605
KUTNER BRINEN DICKEY RILEY, P.C.
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: klr@kutnerlaw.com

By: _/s/ Shanna M. Kaminski_
Shanna M Kaminski
KAMINSKI LAW, PLLC
P.O. Box 247
Grass Lake, Michigan 49240
Telephone: 248-462-7111
E-mail: skaminski@kaminskilawpllc.com

# Exhibit G

---

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:

GALLUS DETOX SERVICES, INC.
EIN: 88-2490456

    Debtor.

Case No. 23-15280-JGR
Chapter 11

GALLUS DETOX DENVER, LLC
EIN: 84-3421544

    Debtor.

Case No. 23-15283-JGR
Chapter 11

GALLUS DETOX SCOTTSDALE, LLC
EIN: 47-2515577

    Debtor.

Case No. 23-15284-JGR
Chapter 11

GALLUS DETOX DALLAS, PLLC,
EIN: 87-2068937

    Debtor.

Case No. 23-15285-JGR
Chapter 11

## STIPULATION RESOLVING OBJECTIONS TO USE OF CASH COLLATERAL

The Debtors, Gallus Detox Services, Inc. ("GDS"), Gallus Detox Denver, LLC ("Denver"), Gallus Detox Scottsdale, LLC ("Scottsdale"), and Gallus Detox Dallas, PLLC ("Dallas" and together "Debtors"), and Lionheart Funding, LLC ("Lionheart"), by and through their undersigned attorneys, state their Stipulation Resolving Lionheart's Objection to Use of Cash Collateral as follows:

### BACKGROUND

1.   The Debtors filed their respective Voluntary Petitions pursuant to Chapter 11 of the Bankruptcy Code on November 14, 2023. The cases are jointly administered under Case No. 23-15280-JGR, and the Debtors remain debtors in possession and are in operation of its business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182.

2.   GDS is a Delaware corporation with its principal place of business located in Denver, Colorado. GDS is engaged in business as the agent and manager of detoxification clinics located in Denver, Colorado, Scottsdale, Arizona, and Dallas and Houston, Texas. Denver,

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, I served a complete copy of the foregoing **STIPULATION RESOLVING OBJECTIONS TO USE OF CASH COLLATERAL** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Alison Goldenberg, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294
Alison.Goldenberg@usdoj.gov

Joli A. Lofstedt, Esq.
Subchapter V Trustee
P.O. Box 270561
Louisville, CO 80027
joli@jaltrustee.com

Shanna M. Kaminski, Esq.
Kaminski Law, PLLC
P.O. Box 247
Grass Lake, Michigan 49240
skaminski@kaminskilawpllc.com

Theodore J. Hartl, Esq.
Ballard Spahr, LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596
hartlt@ballardspahr.com

Christopher C. Simpson, Esq.
Osborn Maledon P.A.
2929 North Central Avenue
Suite 2000
Phoenix, AZ 85012
csimpson@omlaw.com

C. Daniel Roberts, Esq.
C. Daniel Roberts, P.C.
P.O. Box 6368
Austin, TX 78762
droberts@cdrlaw.net

/s/Vicky Martina
Vicky Martina

| SCOTTSDALE | Book Value | Liquidation Value | | |
|---|---|---|---|---|
| Bank of America (as of 12/31/23) | $ 9,260.15 | $ 9,260.15 | $ - | $ 9,260.12 |
| Accounts Receivable (as of 12/31/23) | $ 239,900.00 | $ 239,900.00 | $ 47,980.00 | $ 191,920.00 |
| | | | | |
| Fixed Assets | | | | |
| Tenant Improvements | $ 305,201.09 | $ - | $ - | $ - |
| Medical Equipment | $ 66,761.20 | $ 10,000.00 | $ 1,000.00 | $ 9,000.00 |
| Technology Equipment | $ 11,503.45 | $ 1,000.00 | $ 100.00 | $ 900.00 |
| Furniture and Fixtures | $ 25,023.23 | $ 2,000.00 | $ 200.00 | $ 1,800.00 |
| Software/Intangible Assets | $ 5,143.20 | $ - | $ - | |
| Accumulated Depreciation | $ (59,201.03) | | | |
| Book Value of Fixed Assets | $ 354,431.14 | | | |
| | | | | |
| Total Liquidation Value - Scottsdale | | $ 262,160.15 | | |
| DALLAS | Book Value | Liquidation Value | | |
| Bank of America (as of 12/31/23) | $ 10,634.36 | $ 10,634.36 | $ - | $ 10,634.36 |
| Accounts Receivable (as of 12/31/23) | $ 111,293.00 | $ 111,293.00 | $ 22,258.60 | $ 89,034.40 |
| | | | | |
| Fixed Assets | | | | |
| Tenant Improvements | $ 201,778.69 | $ - | | |
| Medical Equipment | $ 57,349.30 | $ 10,000.00 | $ 1,000.00 | $ 9,000.00 |
| Technology Equipment | $ 61,530.74 | $ 5,000.00 | $ 500.00 | $ 4,500.00 |
| Other Equipment | $ 13,489.00 | $ 1,000.00 | $ 100.00 | $ 900.00 |
| Furniture and Fixtures | $ 117,575.89 | $ 8,000.00 | $ 800.00 | $ 7,200.00 |
| Software/Intangible Assets | $ 5,416.64 | $ - | | $ - |
| Accumulated Depreciation | $ (82,735.30) | | | |
| Book Value of Fixed Assets | $ 374,404.96 | | | |
| | | | | |
| Total Liquidation Value - Dallas | | $ 145,927.36 | | $ 490,900.42 |
| | | | MCA Liens | $ (926,000.00) |
| | | | Other Liens | $ (800,000.00) |
| | | | Value for the Estate | $ - |

Kutner Brinen Dickey Riley, P.C.
1660 LINCOLN STREET
SUITE 1720
DENVER, CO 80264

Return Service
Requested

0000010

TR# 6128132333

US Bankruptcy Court
US Custom House
721 19th St.
Denver, CO 80202-2508