UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 23-15280-JGR |
| GALLUS DETOX SERVICES, INC., ) | |
| EIN: 88-2490456 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| GALLUS DETOX DENVER, LLC., ) | Case No. 23-15283-JGR |
| EIN: 84-3421544 ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| GALLUS DETOX SCOTTSDALE, LLC., ) | Case No. 23-15284-JGR |
| EIN: 47-2515577 ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| GALLUS DETOX DALLAS, PLLC., ) | Case No. 23-15285-JGR |
| EIN: 87-2068937 ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO JOINT PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024**

The United States Trustee ("UST"), by and through undersigned counsel, hereby objects to the confirmation of Joint Plan of Reorganization Dated February 12, 2024 (Docket #176). In support of his Objection, the UST states and alleges as follows:

**SUMMARY**

First, the Debtors' plan is not feasible under 11 U.S.C. § 1129(a)(11).

Second, the Debtors' Plan is not proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3).

Third, the Debtors' Plan has additional defects in the plan provisions regarding the exculpation clause and Class 9.

1

**PROCEDURAL BACKGROUND PERTINENT FACTS**

1. Gallus Detox Services, Inc. ("GDS"), Gallus Detox Denver, LLC ("Gallus Denver"), Gallus Detox Scottsdale, LLC ("Gallus Scottsdale"), and Gallus Detox Dallas, PLLC ("Gallus Dallas") (collectively the "Debtors") filed voluntary petitions for relief under Subchapter V of Chapter 11 of Title 11, United States Code, on November 14, 2023.[1] Keri Riley is Debtors' attorney.

2. GDS is located in Denver and is the manager and agent of three operating detoxification clinics located in Denver, CO, Scottsdale, AZ and Dallas, TX. Per the Debtors' Status Report, the Denver, Scottsdale, and Dallas detoxification clinics are managed by GDS in all respects, including employee management, financial management, and operational management (Docket #106 at ¶ 2). Each clinic is wholly owned by a doctor to ensure compliance with applicable Corporate Practice of Medicine statutes, but each clinic is managed in all respects by GDS. (Plan, Docket #176 at p. 11).

3. Warren Olsen is the Chief Executive Officer of GDS and is the authorized representative of Gallus Denver, Gallus Scottsdale and Gallus Dallas. (Docket #18). In 2019, SCB Global Healthcare Services, LLC, a company Warren Olsen formed with Russell Matthews, formed GDS with the intention of managing the business affairs of Gallus Scottsdale. (Docket #18 at ¶ 8). Gallus Scottsdale has operated since 2015 (Docket #18 at ¶¶ 6-7). Gallus Denver was opened in May 2020. (Docket #18 at ¶ 9). Gallus Dallas was opened in early 2021. (Docket #18 at ¶ 10). To comply with Corporate Practice of Medicine statutes, each location has a medical director. The medical directors are as follows: Gallus Denver - Dr. Angela Walcher; Gallus Scottsdale - Dr Ron Sierzenski; and Gallus Dallas – Dr. Shabana Perez.

4. The four cases are jointly administered (Docket #35). The cases are jointly administered under the GDS case, Case No. 23- 15280-JGR, and the Debtors remain debtors in possession and are in operation of its business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182.

5. On November 15, 2023, the UST appointed Joli Lofstedt as the Subchapter V Trustee in all four cases.

**Debtors' Cash Collateral and Post-Petition Financing**

6. On November 15, 2023, Debtors filed a Motion to Use Cash Collateral. An interim order authorizing use of cash collateral was entered on November 22, 2023 (Docket #41). Stipulations were filed resolving creditors' objection to the use of cash collateral and final orders approving stipulations for the use of cash collateral were entered on January 17, 2024 (Dockets #146, #147 and #148).

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. Unless otherwise indicated, all references to a "§" or "Section" are to a section of the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

7. On December 12, 2023, Debtors filed on an emergency basis, a Motion for Approval of Secured Promissory Note and for Authority to Incur Debt on a Secured Basis (Docket #75). On December 13, 2023, an Order was entered approving all four Debtors' post-petition loan agreement with lender Mitchell Milias for a post-petition secured loan in the amount of $200,000 (Docket #87 and Docket #101). Debtors disclosed that the lender Mitchell Milias is a minority shareholder in GDS, holding a 4.14% interest in GDS and that Lender Mitchell Milias does not have any officer or director role with respect to any of the Debtors. (Docket #75 at ¶ 5). A final order was entered on January 10, 2024 (Docket #128).

8. On December 13, 2024, Debtor filed a Motion to Borrow up to $250,000 on a secured basis from 2 Street Investments, LLC (a $50,000 loan), Stanhope Reed Rigby Advisory, LLC (a $15,000 loan), Michael Dixon (a $1,650 loan) and Walter van Woudenberg (a $183,320 loan) (Docket #89). An order authorizing Debtors to incur debt on a secured basis and approving the secured promissory notes was entered on January 10, 2024 (Docket #127). The UST believes that these loans are exhausted pursuant to the cash deficits the Debtors have reported. The UST notes the following about these loans:

    a. 2 Street Investments, LLC is a general unsecured creditor of the Debtor, and is owned by the Debtors' Chief Medical Officer (Docket #89 at ¶ 5).

    b. Stanhope Reed Rigby Advisory, LLC is a pre-petition unsecured creditor based on a convertible note and holds a 0.59% ownership interest in GDS. (Docket #89 at ¶ 6).

    c. Michael Dixon is a pre-petition unsecured creditor based on a convertible note, and holds a 0.06% ownership interest in GDS. (Docket #89 at ¶ 7).

    d. Walter van Woudenberg is a pre-petition secured creditor with a secured claim in the amount of $250,000, a general unsecured creditor with an unsecured claim in the amount of $1,017,671.24, and a minority equity interest holder with a 1.25% interest in GDS. (Docket #89 at ¶ 8).

    e. The Debtors are joint obligors on the Loans, and the Loans are to be secured by: 1) all goods, inventory, equipment, fixtures, instruments, documents, supporting obligations, and intellectual property and contracts of GDS; and 2) all assets of Gallus Detox Scottsdale, LLC, Gallus Detox Denver, LLC and Gallus Detox Dallas, PLLC. (Docket #89 at ¶ 10).

    f. As to GDS, the proposed liens securing the Loans will be *pari passu* with the pre-petition liens of Allen Fata and Walter van Woudenberg, who have a pre-petition lien on goods, inventory, furniture, equipment, and intellectual property of GDS. (Docket #89 at ¶ 11).

3

  g. The proposed liens will further be *pari passu* with the liens for the secured loan of Mitchell Milias as to the assets of Dallas, Denver, and Scottsdale.

  h. As an additional grant of security to Mr. van Woudenberg, the Secured Promissory Note for Mr. van Woudenberg contained several terms regarding the operation and control of Debtors' businesses.[2]  (Docket #89 at ¶ 13).

9. On March 19, 2024, the Debtor filed a Motion for Authorization to Enter into Premium Finance Agreement and Security Agreement (Docket #201).  The Motion states that GDS is unable to pay the $167,296.72 premium for insurance policies without financing (Docket #201 at ¶ 3).  The Motion is pending and Debtors seek to enter an agreement with IPFS Corporation.  IPFS appears to be a financing company that specializes with working with companies who collect from insurance companies.

### Appointment of Healthcare Ombudsman

10. On December 20, 2023, the UST filed Notices of Appointment of Health Care Ombudsman and appointed Eric Huebscher of Huebscher & Co. as the patient care ombudsman in all four cases ("Ombudsman Huebscher").

11. Pursuant to 11 U.S.C. § 333, Ombudsman Huebscher has been monitoring the cases. On February 13, 2024, Ombudsman Huebscher provided his first report via Zoom to the Court.  In early February 2024, Ombudsman Huebscher requested that the Debtors provide him with weekly cash forecasts. This was prompted when the last $50K of DIP financing was provided to the Debtors the week of February 5, 2024.  Ombudsman Huebscher noted that when he was appointed the Debtors claimed they were "burning through $100K per month." Ombudsman Huebscher has shared the weekly forecasts with the UST and Subchapter V Trustee.

---

[2] Essential terms of the promissory note between Debtors and Mr. van Woudenberg include the following: a. Mr. van Woudenberg shall have the right and ability to appoint one (1) member to the Board of Directors for Gallus Detox Services; b. The Debtors shall provide regular reporting to Mr. van Woudenberg including view-only access to bank accounts, daily occupancy reports, weekly cash flow statements, and monthly financial statements; c. Mr. van Woudenberg shall have the ability to review and approve any budgets proposed by the Debtors, but shall not have the ability to alter and amend any payments authorized or required by the Bankruptcy Court, prior agreements reached with creditors, or any payment terms provided under any duly confirmed Plan of Reorganization; d. Mr. van Woudenberg shall have the ability to review and approve any compensation paid to any Chief Operating Officer or Chief Executive Officer employed by the Debtor; e. Mr. van Woudenberg shall have the ability to effectuate a change in control, including controlling any sale, reorganization, or restructuring process, subject to seeking approval of such change on motion to the Bankruptcy Court with appropriate notice; and f. Any Plan proposed by the Debtor shall provide for a conversion of Mr. van Woudenberg's general unsecured claim to senior preferred equity, in addition to providing new common stock to be issued through a Plan of Reorganization. (Docket #89 at ¶ 13)

**Debtors' Plan of Reorganization**

12. On February 12, 2024, Debtors filed their Joint Plan of Reorganization Dated February 12, 2024 (Docket #176).

13. Debtors state that post-petition Debtors have continued their restructuring efforts to become profitable and fund a Plan. Specifically, Debtors stated the following:

> The Debtors closed the Houston clinic in December 2023 as the clinic was proving to be unsustainable for the Debtors' operations. The Debtors have continued to reduce their overall staff size in order to reduce overhead expenses, and are working to develop new streams of revenue, including preparing to launch an Intensive Outpatient Program that will operate in harmony with the Denver clinic. As the Debtors continue to restructure their operations, the Debtors anticipate that new revenue will be generated, and the Debtors will continue to grow.

(Plan, Docket #176 at p. 12).

14. A confirmation hearing is scheduled for April 18, 2023.

## OBJECTIONS

*Feasibility*

15. To be confirmed, a Chapter 11 plan must be feasible. 11 U.S.C. § 1129(a)(11). A plan is feasible when it is not likely to be followed by liquidation or further financial reorganization. *Id*. In other words, feasibility "imposes a requirement that any plan must provide a realistic and workable framework for reorganization." *In re Experient Corp.*, 535 B.R. 386, 413 (Bankr. D. Colo. 2015) (quoting *In re Inv. Co. of The SW., Inc.*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006)); *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985) ("[T]he bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.").

16. The Debtor bears the burden to show feasibility by a preponderance of the evidence. *In re Experient Corp.*, 535 B.R. at 413 (*citing In re Inv. Co. of The SW., Inc.* 341 B.R. at 310). The Debtor bears the burden to demonstrate that achieving the necessary result is "not subject to 'material hurdles' or readily anticipated, significant obstacles." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013). Further, any such determination must be "firmly rooted in predictions based on objective fact." *In re Inv. Co. of The SW., Inc.*, 341 B.R. at 311 (quoting *In re Danny Thomas Props. II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001)); *In re Brandywine Townhouses, Inc.*, 524 B.R. 889 (Bankr. N.D. Ga. 2014). The feasibility requirement is designed to prevent the confirmation of visionary or speculative plans. *In re Inv. Co. of The SW., Inc.*, 341 B.R. at 311; *In re Khan*, 2015 WL 739854, at *3 (Bankr. D. Colo. Feb.

5

19, 2015) (Chapter 13 case noting speculative refinance or sale of property as insufficient for feasibility).

17. While a guaranteed outcome is not required, the proposed plan must offer a reasonable assurance of success. *In re Gentry*, 807 F.3d 1222, 1225–26 (10th Cir. 2015); *In re Ames*, 973 F.2d 849, 851 (10th Cir.1992); *In re SCC Kyle Partners, Ltd.*, 518 B.R. 393, 406 (W.D. Tex. 2014) ("[T]he bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet."); *In re Sanam Conyers Lodging, LLC*, 619 B.R. 784, 789 (Bankr. N.D. Ga. 2020) ("The use of the word 'likely' in Section 1129(a)(11) requires the Court to assess whether the plan offers a reasonable probability of success, rather than a mere possibility.").

18. It seems very unlikely that Debtors can meet their burden. Debtors are relying on a "new business model," called an "Intensive Outpatient Program" ("IOP") that will operate in harmony with the Denver clinic. The Debtors have not filed with the Plan any concrete information about this new Intensive Outpatient Program. Upon information and belief, the Debtors intend to create a new corporate entity for the OIP work. Although Debtors state in the feasibility section of their Plan that they are actively pursuing expanding their offerings to include outpatient programs, this has yet to occur and no timetable is given. (Docket #179 at p. 29). Parties-in-interest have no idea what information the Debtors are relying on for this new business model. Debtors cannot deny that they too realize that the IOP is speculative because they only intend to use Denver as a "test site" to see if the IOP is even viable and financially successful for the other clinics. *Id*.

19. In determining feasibility, a court should consider the following:

> (1) The adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of continuation of the same management; and (6) any other related manner which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*In re Rocky Mountain Land Co., LLC*, 2014 WL 1338292, *11 (Bankr. D. Colo. Apr. 3, 2014).

20. "When determining whether a plan is feasible, courts often consider a debtor's cash flow projections showing its ability to simultaneously make plan payments and fund projected operations." *In re Inv. Co. of The SW., Inc.*, 341 B.R. at 311 (citations omitted). "A debtor must sustain its burden to somehow prove that it will be able to perform all obligations it is assuming under the plan." *Id*. (citations omitted).

21. Applying these above-listed factors, the Debtors' Plan is not feasible. The UST cannot rely on the financial information in its current form. For example, the United States Trustee compared the average monthly cash flows from In-patient detox operations demonstrated in the MORs to the Plan. The Plan month of June 2024 was used as a representative month for this comparison. On average, the MORs from November 2023 to January 2024 show net

6

monthly cash outflow of $250,749 while the plan represents net monthly cash inflow of $21,819. The representations of net cash flow per the plan are inconsistent with the MORs.

22. Further, the United States Trustee compared the average monthly cash flows from In-patient detox operations demonstrated in the 13 Week Cash Forecast to the Plan. The Plan month of June 2024 was used as a representative month for this comparison. The Debtor's monthly net cash outflow is $98,530 when calculated on the week of February 12, 2024 through the week of March 11, 2024. The plan represents net monthly cash inflow of $21,819. The representations of net cash flow per the plan are inconsistent with what the Debtors have been able to demonstrate per the 13 Week Cash Forecast.

23. Debtors have relied on post-petition financing for the entirety of their cases. The latest motion for post-petition financing was the emergency Motion filed on March 19, 2024. Debtor GDS is unable to pay the $167,296.72 premium for insurance policies unless it obtains financing. This does not bode well and calls into question whether all the clinics should even be operating.

24. Debtors do not appear to have sufficient capital to fund a Plan as the current capitalization has been swiftly depleting. Per the Plan, Debtor's GDS' bank account states that as of December 31, 2023, the DIP account had in the amount of $175,050.14. The most recent 13-week cash forecast shows $65,914 (combined). If the Debtors intend to start another business for the presumed outpatient business, it is not clear how this will be funded. Moreover, there is no indication on how this new company would contribute to funding the Debtors' Plan.

25. Debtors' projections are also speculative. The Debtors have no track record of experience operating an outpatient detoxification program and have provided scant details in the Plan on the outpatient program they intend to start. According to the court in the *Rocky Mountain Land Co*. case, feasibility of the plan is mainly dependent on the sixth factor. *In re Rocky Mountain Land Co., LLC*, 2014 WL 1338292, *12 (Bankr. D. Colo. Apr. 3, 2014). "Section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *Id*. (quotation omitted). As discussed below, Debtors are unable to prove the sixth factor.

26. The earning power of the Debtors and their newly formed business model "Intensive Outpatient Program" calls into question as to whether the Debtors will be able to fulfill their Plan obligations. Debtors fail to provide a basis for how they arrived at figures in their projections. Upon information and belief, the Debtors have changed its stay for alcohol detox patients from four days to an industry standard five days, which allegedly adds revenue via patients' applicable insurance. This model purportedly applies to approximately 60% of the Debtors' detoxification patients. Yet, the projections, based on this "new business model" are not clear. Since the UST is not aware of an industry standard for alcohol detoxification patients, it is possible that other creditors are in the dark too. The Debtors' Plan should fully discuss the alcohol industry standard, and the Debtors' projections should clearly show the 60% increase. Upon information and belief, the Debtors have stopped providing credits for patients that leave against medical advice to be used within a year after their original stay. Since this change allegedly bolsters the Debtors' revenues, this should be explained more fully in the Plan and

reflected clearly in the projections. Upon information and belief, the Debtors have also started to provide packaged pricing that is allegedly beneficial to the patients and the Debtors. Since it is not discussed in the Plan and there is no corresponding financial information, this is speculative.

27. "A critical element of feasibility is a debtor's projections of income and expenses." *In re Platte River Bottom, LLC*, 2016 WL 241464, at *8. "All income projections must be based on concrete evidence of financial progress, and must not be speculative, conjectural, or unrealistic." *Id*. (citations omitted); s*ee also, In re Rocky Mountain Land Co., LLC*, 2014 WL 1338292, at *11. The difficulty the Debtors face is their inability to propose a confirmable Plan because the Debtors are incapable of producing an operating history to corroborate the feasibility of their projections. *See In re Platte River Bottom, LLC*, 2016 WL 241464, at *7.

28. Like the debtor in the *Platte River Bottom* case, "[i]t is difficult to conceive of projections that could be less concrete and more speculative in nature that projections for a start-up venture made by an operator with no experience running a business." *Id*. at *8. Unlike the plan proposed in the *Saratoga and North Creek Railway* case, Debtors' Plan in this case is a "pie-in-the-sky 'visionary scheme.'" *In re Saratoga and North Creek Railway, LLC*, 2022 WL 127938, at *19 (Bankr. D. Colo. Jan. 1, 2022).

29. Debtors have thus far provided insufficient evidence that liquidation will likely not occur after confirmation of their Plan. It is not apparent that evidence exists, beyond purely speculative projections, to show that the Debtors could profitably operate their detoxification clinics either in their current state or with the new outpatient business model or subsidiary company. *See e.g., In re Platte River Bottom, LLC*, 2016 WL 241464, at *7. There is no basis upon which to evaluate the Debtors' projections. *See id*. Moreover, it is impossible to reasonably conclude that the Debtors can make all their required Plan payments because there is no track record of sales for their clinics with the new business model and changes. *See e.g., In re Inv. Co. of The SW., Inc.,* 341 B.R. at 298. Like the debtor in the *Investment Company of the Southwest* case, Mr. Olsen's generalized testimony at the 341 Meeting that future revenues will provide income and fund a Plan, is not convincing evidence to support confirmation of a plan. *Id*. at 313. A court cannot confirm a plan relying on a debtor's optimistic testimony, especially when no firmly rooted, objective facts exist. *Id*. at 317. Accordingly, the Debtors' case is objectively futile. *See In re Platte River Bottom, LLC,* 2016 WL 241464, at *7 (Court stating that the debtor's case should be dismissed or converted in accordance with 11 U.S.C. 1112(b)(1) because the debtors' case is objectively futile).

30. For all the reasons stated above, the UST contends that there is not a reasonable likelihood that the Plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, meeting the feasibility requirement of 11 U.S.C. §1129(a)(11).

*Good Faith*

31. Pursuant to 11 U.S.C. § 1129(a)(3), the Court can only confirm a Chapter 11 plan if the plan has been "proposed in good faith and not by means forbidden by law." The Debtors bear the burden of proving good faith. *In re Saratoga and North Creek Railway, LLC*, 2022 WL

127938, at *19. The Bankruptcy Code does not define the flexible concept of "good faith." The Tenth Circuit standard for evaluating good faith, is whether, "there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purpose of the Bankruptcy Code, that is, the plan is feasible, practical, and would enable the company to continue and pay its debts in accordance with the plan provisions." *In re Pikes Peak Water Co.*, 779 F.2d at 1459; *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160, 1178-1179 (10th Cir. 2012).

32. The Tenth Circuit also requires courts to weigh whether the Debtors intended to abuse the judicial process and the purposes of the reorganization provision and to focus on the Debtors' post-petition conduct and the plan itself. *In re Pikes Peak Water Co.,* 779 F.2d at 1460. The Section 1129(a)(3) test "focuses on whether a plan is likely to achieve its goals and whether those goals are consistent with the Code's purposes." *In re Experient Corp.*, 535 B.R. at 410 (*citing Paige* at 1179).

33. A standard such as "good faith" requires a court to assess the "totality of the circumstances." *Rocky Mountain Land*, 2014 WL 1338292, at *9. Accordingly, in addition to assessing technical compliance with the Bankruptcy Code and feasibility, the Court also should consider "whether a plan is proposed with honesty and sincerity" and "whether a plan's terms or the process used to seek its confirmation was fundamentally fair." *In re Riviera Drilling*, 2012 WL 6719591, at *5 (Bankr. D. Colo. Dec. 12, 2012) (citing *In re Global Water Techs., Inc.*, 311 B.R. 896, 903 (Bankr. D. Colo. 2004)). Debtors' Plan is not proposed with sincerity and the Plan's terms and suggested processes are not fundamentally fair.

34. In this case, Debtors' Plan is too speculative and does not have concrete goals. The Debtors have not sustained the burden to somehow prove that they will meet their obligations under the Plan. *See In re Rocky Mountain Land Co., LLC*, 2014 WL 1338292 at *13 (Bankr. D. Colo. Apr. 3, 2014)

35. Further, Debtors' lack of good faith is evidenced inasmuch as there are no Plan provisions that explain Debtors' new business model. The Plan provides no information regarding how the Debtors will manage the new business model and/or subsidiary and how the Debtors will avoid all problems that occurred with their current detoxification clinics, as well as the detoxification clinics that shuttered. Thus, the Plan is not proposed in good faith.

36. "The rehabilitation of a business enterprise is the primary legitimate purpose of a chapter 11 case. Here, the Debtors seek to create a new business model. As stated by the Court in the *Platte River Bottom* case, "bankruptcy courts generally do not function as incubators for start-up enterprises." *In re Platte River Bottom, LLC*, 2016 WL 241464, at *6. Because the Debtors' Plan relies on the success of new business model, "there is no evidence to support a finding of feasibility, which makes confirmation virtually impossible." *Id*.

37. For these reasons, the Plan is not proposed in good faith as is required by 11 U.S.C. §1129(a)(3).

*Other Objections*

*Class 9*

38. **Class 9, DE7, S7, DA7. Secured Claims of Post-Petition Lenders.** In a footnote on page 25, the common stock granted to 2 Street Investments, LLC, Stanhope Reed Rigby Advisory, LLC, Michael Dixon, Walter van Woudenberg and Mitchell Milias "[c]ontemplates $200,000 additional DIP Loan." (Docket #176 at p. 25). The original loans were in the amount up to $250,000. It appears from the Debtors' financials that the loans from these parties have been exhausted by the Debtors. Debtors do not refer to any additional DIP loans with these entities/individuals. If additional DIP lending is needed, this bolsters the UST's argument that the Plan is not feasible.

*Exculpation Clause*

39. Pursuant to the definitions section of the Plan, 2.32 - "Exculpated Party" means GDS, Denver, Scottsdale, and Dallas and their respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals. This definition is overly broad. An "exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committee and their members, and the Debtor's director and officers." *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *see also Midway Gold*, 575B.R. 475, 512-13 (Bankr. D. Colo. 2017).

40. The exculpation clause set forth in the Plan is as follows:

> **Except as set forth in this Plan, neither the Debtors, nor any of their agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtors pursuant to the Plan during the pendency of the Debtors' Chapter 11 Cases and through the date of confirmation of the Plan; provided that the foregoing shall have no effect on the liability for a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of**

> **Professional Conduct. For the avoidance of a doubt, there shall be no liability limitation for the Debtors and their Insiders, for their actions or omissions occurring before the Petition Date,** *or after the Confirmation Date*, **or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.**

(Plan, Docket #176 at 12.16, p. 34).

41. The UST objects that the exculpation clause is overly broad. In examining (and rejecting) an exculpation provision of similar breadth in the case of *In re Midway Gold US, Inc.*, 575 B.R. 475 (Bankr. D. Colo. 2017), Chief Judge Romero explained:

> The Court finds this provision overly broad because there does not appear to be any temporal limitation on the conduct and omissions being exculpated. The provision simply immunizes the Exculpated Parties from claims arising on or *after* the Petition Date as well as "any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Sales or the liquidation of the Debtors." This language can reasonably be read to extend the exculpation to conduct and omissions arising after the confirmation date and after the Chapter 11 Cases have concluded, including, but not limited to, administration and implementation of the Plan itself.

*In re Midway Gold US, Inc., 575 B.R. at 512*. A recent opinion from Judge Tyson also affirmed the necessity of limiting the exculpated conducted to actions occurring prior to confirmation. *In re Willowood USA Holdings, LLC*, Case No. 19-11079 KHT, Docket No. 501, Order Denying Confirmation, p.17 (Bankr. D. Colo. February 14, 2020) ("The exculpation provision is temporally limited as well to the Chapter 11 proceeding, through the Confirmation Date."). The UST objects to the approval of the exculpation provision without appropriate temporal limitations.

WHEREFORE, for all the following reasons, confirmation of Debtors' Plan should be denied.

Dated: March 21, 2024    Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

/s/ Alison E. Goldenberg
By: Alison E. Goldenberg, #37138
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO  80294
(303) 312.7238
(303) 312-7259 fax
Alison.Goldenberg@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on March 21, 2024, that a copy of **UNITED STATES TRUSTEE'S OBJECTION TO JOINT PLAN OF REORGANIZATION DATED FEBRUARY 12, 2024** was served on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Jeffrey S. Brinen on behalf of Debtor   Gallus Detox Dallas, PLLC
jsb@kutnerlaw.com,   vlm@kutnerlaw.com

Jeffrey S. Brinen on behalf of Debtor   Gallus Detox Denver, LLC
jsb@kutnerlaw.com,   vlm@kutnerlaw.com

Jeffrey S. Brinen on behalf of Debtor   Gallus Detox Scottsdale, LLC
jsb@kutnerlaw.com,   vlm@kutnerlaw.com

Jeffrey S. Brinen on behalf of Debtor   Gallus Detox Services, Inc.
jsb@kutnerlaw.com,   vlm@kutnerlaw.com

Theodore J. Hartl on behalf of Creditor   Capitol Center Property, LLC
hartlt@ballardspahr.com,   blessingb@ballardspahr.com

Shanna M. Kaminski on behalf of Interested Party   AKF, Inc. dba FundKite
skaminski@kaminskilawpllc.com

Shanna M. Kaminski on behalf of Interested Party   Lionheart Funding, LLC
skaminski@kaminskilawpllc.com

Shanna M. Kaminski on behalf of Interested Party   Reliance Platinum, LLC dba Mynt Advance

skaminski@kaminskilawpllc.com

Joli A. Lofstedt
joli@jaltrustee.com, ecf.alert+Lofstedt@titlexi.com,brenda@jaltrustee.com

Austin McMullen on behalf of Creditor Emerus/BHS SA Hausman LLC, EBD BEMC Mansfield, LLC and DE Craig Ranch LLC
amcmullen@bradley.com

Keri L. Riley on behalf of Debtor Gallus Detox Dallas, PLLC
klr@kutnerlaw.com, vlm@kutnerlaw.com

Keri L. Riley on behalf of Debtor Gallus Detox Denver, LLC
klr@kutnerlaw.com, vlm@kutnerlaw.com

Keri L. Riley on behalf of Debtor Gallus Detox Scottsdale, LLC
klr@kutnerlaw.com, vlm@kutnerlaw.com

Keri L. Riley on behalf of Debtor Gallus Detox Services, Inc.
klr@kutnerlaw.com, vlm@kutnerlaw.com

C. Daniel Roberts on behalf of Creditor F2920M Property Management, LLC
droberts@cdrlaw.net

Christopher C Simpson on behalf of Creditor AWW Estes MOB Owner, LLC
csimpson@omlaw.com, pnieto@omlaw.com

Christopher C Simpson on behalf of Creditor AWW Estes Owner, LLC
csimpson@omlaw.com, pnieto@omlaw.com

Christopher C Simpson on behalf of Creditor Wentworth Property Management, LLC
csimpson@omlaw.com, pnieto@omlaw.com

*Via U.S. Mail*

Eric Huebscher, MBA, CPA, CFE, CPCP
Huebscher & Co.
301 East 87th Street, 20E
New York, NY 10128

Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Ste. 1720
Denver, CO 80264

Gallus Detox Services, Inc.
225 E. 16th Ave., Suite 1100
Denver, CO 80203

Gallus Detox Denver, LLC
225 E. 16th Ave., Suite 1100
Denver, CO 80203

Gallus Detox Scottsdale, LLC
225 E. 16th Ave., Suite 1100
Denver, CO 80203

Gallus Detox Dallas, PLLC
225 E. 16th Ave., Suite 1100
Denver, CO 80203

/s/ Cynthia Ortega
Office of the United States Trustee